**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BCD TECHNOLOGY HOLDINGS, LLC and BURGESS COMPUTER DECISIONS, LLC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 25-cv-06944 |
| v. | ) ) | Hon. Lindsay C. Jenkins |
| PARAGON MICRO, INC. EUGENE KOZLOVITSER, DARREN GIACOMINI, MAX BURGESS, SANTO NUDO, ERIK SCHMIDT AND TRACEY LINGLE. | ) ) ) ) ) ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiffs BCD Technology Holdings, LLC and Burgess Computer Decisions, LLC, formerly known as Burgess Computer Decisions, Inc. (collectively, "**BCD**"), by and through its undersigned counsel, files this Amended Complaint against Defendants Paragon Micro, Inc., ("**Paragon Micro**") Eugene Kozlovitser, ("**Kozlovitser**"), Darren Giacomini ("**Giacomini**"), Max Burgess ("**Burgess**"), Santo Nudo ("**Nudo**"), Erik Schmidt ("**Schmidt**"), and Tracey Lingle ("**Lingle**") (collectively, "**Defendants**") and alleges as follows:

**INTRODUCTION**

1.      BCD seeks injunctive and equitable relief to prevent irreparable harm being perpetuated by Defendant Paragon Micro and BCD's former employees Kozlovitser, Giacomini, Burgess, Nudo, Schmidt, and Lingle (the "**Employee Defendants**"), each of whom has been hired by Paragon Micro to recreate BCD's business and unfairly compete against BCD. BCD also seeks redress from and compensation for damages caused by Defendants' wrongful acts.

2.      Paragon Micro is a direct competitor of BCD. Rather than compete on service, skill, price, or professionalism, Paragon Micro has chosen to cut corners by seeking to steal BCD's

- 1 -

investments in its personnel, technology, and relationships. As set forth below, Paragon Micro's misconduct reflects a calculated strategy to unfairly compete with BCD by attacking its workforce, interfering with its employment agreements, misappropriating its proprietary knowledge, and reconstructing BCD's core operations under the Paragon Micro banner using BCD's employees and confidential information.

3.     This scheme began when Paragon Micro poached BCD's Chief Technology Officer (Defendant Kozlovitser) for the purpose of replicating BCD's Innovation Center lab and advising Paragon Micro on the unique technical skill sets of BCD's workforce and institutional information to copy BCD's business model, methods, and infrastructure. Armed with this insider information, Paragon Micro systematically identified and targeted additional BCD employees and the knowledge they possessed about BCD's business starting with BCD's technical manager, lab supervisor and, upon information and belief, BCD's lab technician. Paragon Micro then turned to BCD's director of business development (Defendant Giacomini), who possessed critical operational knowledge and access to confidential information that is now being used for Paragon Micro and against BCD. Next, Paragon Micro targeted BCD's business development manager (Defendant Burgess) to breach his non-compete agreement by accepting employment at Paragon Micro in the same role in which he was engaged at BCD and to compete against BCD. Paragon Micro then induced yet another BCD sales representative (Defendant Nudo) to violate his non-compete by taking a substantially similar role at Paragon Micro and to compete against BCD. Paragon Micro also induced BCD's Strategic Accounts Solutions Specialist (Defendant Schmidt), who possesses critical information related to BCD's long-term customers to violate his confidentiality agreement with BCD and use that information for the benefit of his new employer Paragon Micro and against BCD. Finally, Paragon Micro induced BCD's National Account

Manager (Defendant Lingle) to violate his non-compete by taking a substantially similar role at Paragon and to compete against BCD. This pattern of conduct reflects a deliberate effort to unfairly compete against BCD, and to attack its business and customer relationships by weaponizing BCD's own people and intellectual property against it.

4.      For their part, the Employee Defendants have brazenly violated their confidentiality and non-compete obligations to BCD by misappropriating BCD's confidential and proprietary information and unlawfully interfering with BCD's business relationships and opportunities for the benefit of Paragon Micro.

5.      Defendant Kozlovitser, while still under contract as a consultant for BCD, joined Paragon Micro, a direct competitor of BCD in a substantially similar role to the position he held with BCD. Since his resignation and in direct violation of a confidentiality agreement he executed with BCD, Mr. Kozlovitser has misappropriated BCD confidential and proprietary information to solicit employees and divert business away from BCD and retain them for Paragon Micro. On information and belief, Paragon Micro hired Mr. Kozlovitser to copy BCD's business methods and processes including the recreation of BCD's lab environment to manufacture, test, and optimize products for Paragon Micro.

6.      Similarly, immediately following his departure from BCD on April 11, 2025, Defendant Giacomini joined Paragon Micro. Despite receiving a reminder of his confidentiality obligations to BCD on that same day, since his resignation, Mr. Giacomini has been in possession of BCD information including on a laptop computer used throughout portions of his employment at BCD. Mr. Giacomini's possession and refusal to return or otherwise make available for inspection the laptop computer is of particular concern given his employment with Paragon Micro and the fact that he is soliciting BCD's long-term customers.

7.     Defendant Schmidt likewise joined Paragon Micro following his departure from BCD in July 2025 and serves in a substantially similar role. On information and belief, Paragon Micro hired Mr. Schmidt because of his knowledge of BCD's trade secrets and confidential information, including BCD's client list, pricing information, and terms of service.

8.     Defendants Burgess, Nudo, and Lingle also resigned from BCD and accepted employment in substantially the same roles for Paragon Micro as the ones had at BCD and will be competing against BCD in violation of their non-compete agreements.

9.     Given the Employee Defendants' misappropriation of BCD confidential information to misappropriate BCD's business model and methods, steal business and customers away from BCD and retain them for Paragon Micro, they have breached their confidentiality agreements with BCD and, in the case of Burgess, Nudo and Lingle, are violating their non-compete agreements. Further, as a result of this conduct, Defendants have unlawfully interfered with BCD's contractual and business relationships, misappropriated BCD's trade secrets and unlawfully interfered with BCD's business.

10.    BCD now seeks to enjoin Defendants from misappropriating BCD's confidential and proprietary information to unlawfully interfere with BCD's business. BCD also seeks an award of damages to compensate BCD for the economic and non-economic damages it has suffered because of Defendants' unlawful conduct.

11.    Defendants have engaged in their misdeeds for their own personal gain, which has caused significant monetary damages and irreparable harm to BCD. As set forth in full below, BCD seeks injunctive relief against Defendants, as well as an award to BCD of its monetary damages.

## THE PARTIES

12.     Plaintiff BCD Technology Holdings, LLC is a Delaware limited liability company with its principal place of business located at 560 Bunker CT, Vernon Hills, Illinois 60061. BCD Technology Holdings, LLC is the holding company that wholly owns Burgess Computer Decisions, LLC. BCD Technology Holdings, LLC owns, controls, and manages the assets of its subsidiary, but does not conduct day-to-day business operations.

13.     Plaintiff Burgess Computer Decisions, LLC is an Illinois limited liability company with its principal place of business in Illinois. Burgess Computer Decisions, LLC is a wholly owned subsidiary of BCD Technology Holdings, LLC. It conducts business throughout Illinois, the United States and the world. BCD is an industry leader in video surveillance and storage solutions for security integrator and OEM channels. Employee Defendants were employed by Burgess Computer Decisions.

14.     Defendant Paragon Micro, Inc. is an Illinois corporation with offices, employees and customers located throughout Illinois, the United States and the world. It is purported to have offices located at 901 Deerfield Parkway, Buffalo Grove, Illinois 60089; 200 West Madison Street, Chicago, Illinois, 60606; and its registered agent is located at 55 W. Monroe Street, in Chicago, Illinois. Paragon Micro is a full-service Information Technology solution provider that offers various hardware and software products and services.

15.     Defendant Eugene Kozlovitser was employed by BCD beginning in or about September 2011 and continuing until his resignation in February 2025. Mr. Kozlovitser served as the Director of Information Technology for BCD from September 2011 through December 2021 and later served as the Chief Technology Officer of BCD from January 2022 until his resignation in February 2025.

16.     Defendant Darren Giacomini was employed by BCD beginning in or about July 2017 and continuing until his resignation on April 11, 2025. Mr. Giacomini served as the Director of Networking for BCD from July 2017 until in or about January 2022 and served as Director of Business Development, Advanced Systems for BCD beginning in or about January 2022 through April 11, 2025.

17.     Defendant Max Burgess was employed by BCD beginning on or about June 23, 2014 and continuing until resignation from BCD in May 2025.

18.     Defendant Santo Nudo was employed by BCD beginning on or about May 10, 2016 and continuing until his resignation in June 2025.

19.     Defendant Erik Schmidt was employed by BCD beginning on or about May 7, 2019 and continuing until his resignation in July 2025.

20.     Defendant Tracey Lingle was employed by BCD beginning on or about January 3, 2012 and continuing until his resignation in July 2025.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that it involves an action arising under the federal Defend Trade Secrets Act, 18 U.S.C § 1831, *et seq*. This Court has supplemental jurisdiction over any state law claims raised in this action pursuant to 28 U.S.C. §1367.

22.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that at least Defendant Paragon Micro, Defendants Burgess, Kozlovitser, Schmidt, Lingle, and Nudo are residents of this district and subject to this Court's personal jurisdiction and a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

### Background Regarding BCD and Its Former Employees

23.     BCD, founded in November 1999, provides cutting-edge video surveillance products and storage solutions, including its video surveillance storage servers, industrial servers and switches and AI-ready security appliances.

24.     BCD developed, built and utilizes its Innovation Center to manufacture, test, and optimize high-performance hardware solutions for its customers and has completed more than 170,000 product installations in 91 countries.

25.     BCD has invested millions of dollars in developing its technology and its long-term client relationships including by hiring, training and compensating a sales force to identify and service clients throughout the United States and internationally.

26.     As a result of BCD's significant investment in the development of its technology and long-term client relationships, BCD has taken all reasonable measures to protect its trade secrets and confidential information.

27.     Among other measures, BCD's Employee Handbook explicitly informs employees of their obligations related to confidentiality. A true and accurate copy of BCD's 2024 Handbook is attached hereto as **Exhibit 1**.

28.     BCD's Employee Handbook broadly defines confidential information as including "Compensation data, Customer account information, Customer product preferences, Customer purchasing and financial information, Product build procedures, and All Intellectual Property[.]" Ex. 1 at 13.

29.     BCD's Handbook further states that BCD employees "must not under any circumstances reveal this information outside the Company without prior approval of an executive officer of the Company. Such information can be used only to perform your BCD job duties." *Id*.

30.     Each of the Employee Defendants received BCD's 2024 Employee Handbook and all but Defendant Giacomini signed an Employee Acknowledgment of their receipt and understanding of the policies set forth therein. *See, e.g.*, Ex. 1, at 44. Pursuant to the Employee Acknowledgment, the Employee Defendants acknowledged that "compliance with the handbook is a term and condition of employment." *Id*. at 44.

**Paragon Micro Targets Kozlovitser (BCD's Chief Technology Officer)**

31.     In September 2011, Mr. Kozlovitser was hired as BCD's Director of Information Technology and later became BCD's Chief Technology Officer. Because Mr. Kozlovitser, by virtue of his position, had access to confidential and proprietary information concerning BCD's business, including concerning the development and management of BCD's Innovation Center, the proprietary methods and processes developed and employed by BCD, and the identity and terms of service between BCD and its customers, on February 22, 2018, Mr. Kozlovitser executed a confidentiality agreement with BCD that barred him from disclosing BCD's confidential and proprietary information to third parties.

32.     On January 6, 2021, Mr. Kozlovitser executed a second, superseding confidentiality agreement with BCD that prohibited him from disclosing BCD confidential and proprietary information to third parties. In January 2022, Mr. Kozlovitser was promoted to Chief Technology Officer of BCD, a position that afforded Mr. Kozlovitser more extensive access to BCD's confidential and proprietary information. In that role, Mr. Kozlovitser had direct access to BCD's most confidential information, including its business plans, technology development efforts, customer identities and terms of customer relationships (including customer prices, terms of service, and similar details), customer needs and requests, customer contacts and their information, vendor identities, pricing, and contacts, and other information.

33.     In or about February, 2025, Mr. Kozlovitser informed BCD that he was resigning from the company. He affirmatively represented to BCD that he was not accepting employment with a competitor and, in fact, agreed to continue rendering services to BCD under a February 13, 2025 consulting agreement with BCD ("**Kozlovitser Consulting Agreement**"). A true and accurate copy of the Kozlovitser Consulting Agreement is attached hereto as **Exhibit 2**. This arrangement provided him with ongoing access to BCD's confidential and proprietary information, which Kozlovitser again agreed to keep confidential and not disclose to third parties.

34.     The Kozlovitser Consulting Agreement clearly provided the following:

> BCD expects that, during and after the term of your employment, you will not disclose to third parties, utilize for your own benefit, or otherwise make use of any of BCD's trade secrets or other confidential or proprietary information concerning BCD, except to the extent necessary to carry out your obligations to BCD.

Ex. 2, Kozlovitser Consulting Agreement, at 2.

35.     Despite his representations and obligations, Mr. Kozlovitser accepted a position as Director of Technology and Operations with Paragon Micro—a direct competitor of BCD. Mr. Kozlovitser commenced employment with Paragon Micro prior to the termination of his consulting relationship with BCD on February 19, 2025. In other words, and unbeknownst to BCD, Kozlovitser was working for both Paragon Micro and BCD.

36.     In further violation of his contractual and fiduciary obligations, Mr. Kozlovitser covertly forwarded a communication with a "key sales contact" of a BCD business partner from his BCD corporate email account to his personal Gmail account in the days immediately preceding his departure. This conduct was in direct violation of the consulting agreement he signed and BCD's employee handbook, which expressly prohibits transferring corporate emails to personal accounts and states unequivocally that "there can be no acceptable valid explanation for moving a corporate email to your personal domain." *See* Ex. 1, at 14.

**Paragon Micro Targets Giacomini (BCD's Director of Business Development)**

37.     In July 2017, Mr. Giacomini was hired as BCD's director of networking and later became BCD' Director of Business Development, Advanced Systems. Because of Defendant Giacomini's access to BCD's confidential and proprietary information, on February 26, 2018, Mr. Giacomini executed a confidentiality agreement with BCD that precludes him from disclosing BCD confidential information to third parties (the "**Giacomini Confidentiality Agreement**"). A true and accurate copy of the Giacomini Confidentiality Agreement is attached hereto as **Exhibit 3**.

38.     The Giacomini Confidentiality Agreement broadly defines confidential information as the following:

> [t]echnical and business information relating to [BCD's] proprietary ideas, patentable ideas[,] copyrights and/or trade secrets, existing and/or contemplated products and services, schematics, research and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing, and current or future business plans and models, regardless of whether such information is designated as 'Confidential Information' at the time of its disclosure.

Ex. 3, Giacomini Confidentiality Agreement, at § 1.

39.     Pursuant to the Giacomini Confidentiality Agreement, Mr. Giacomini agreed not to "disclose Confidential Information to any third party (whether an individual, corporation, or other entity) without the prior written consent of [BCD]." Ex. 3, at § 3.

40.     In January 2022, Mr. Giacomini was promoted to Director of Business Development, Advanced Systems for BCD, a role that continued to provide Mr. Giacomini extensive access to BCD's confidential and proprietary information. In that role, Mr. Giacomini had direct access to BCD's most confidential information, including its business plans, technology development efforts, customer identities and terms of customer relationships (including customer

prices, terms of service, client documentation and similar details), customer needs and requests, customer contacts and their information, vendor identities, pricing, and contacts, and other information.

41.     In April 2025, Mr. Giacomini resigned from BCD and immediately began working for Paragon Micro in substantially the same role. Mr. Giacomini, armed with BCD's confidential information including customer "as built" documentation that is necessary to service clients, is actively competing against BCD and diverting business from BCD to Paragon Micro.

**Paragon Micro Targets Burgess (BCD's Business Development Manager) in Violation of Non-Compete Agreement**

42.     In June 2014, BCD hired Mr. Burgess, who remained employed with BCD until his resignation in May 2025.

43.     During his employment at BCD, Mr. Burgess' role centered on sales and he held various sales positions including a manager of international markets, director of sales-international, and business development manager. In his sales roles he was provided with confidential information regarding client identities, client needs, client lists, pricing information, terms of service and other information developed by BCD and obtained by BCD in furtherance of its business.

44.     Mr. Burgess did not bring clients to BCD upon his arrival to the company. The clients serviced by Mr. Burgess consisted of BCD's existing clients, prospective clients developed by BCD employees, and client leads developed by BCD employees. Prior to his separation from BCD, Mr. Burgess was assigned the sales region in the northwest including various states as well as Canada.

45.     Because of his access to BCD's confidential information, Mr. Burgess executed a confidentiality agreement with BCD that barred him from disclosing BCD's confidential and

proprietary information to third parties. Attached as **Exhibit 4** is a copy of the confidentiality

agreement ("**Burgess Confidentiality Agreement**") executed by Mr. Burgess.

46.     The Burgess Confidentiality Agreement broadly defines confidential information

as the following:

> [t]echnical and business information relating to [BCD's] proprietary
> ideas, patentable ideas[,] copyrights and/or trade secrets, existing
> and/or contemplated products and services, schematics, research
> and development, production, costs, profit and margin information,
> finances and financial projections, customers, clients, marketing,
> and current or future business plans and models, regardless of
> whether such information is designated as 'Confidential
> Information' at the time of its disclosure.

Ex. 4, Burgess Confidentiality Agreement, at § 1.

47.     Pursuant to the Burgess Confidentiality Agreement, Mr. Burgess agreed not to

"disclose Confidential Information to any third party (whether an individual, corporation or other

entity) without the prior written consent of [BCD]." Ex. 4 at § 4.

48.     In addition, on June 1, 2016, Mr. Burgess executed a non-compete agreement with

BCD that barred him from competing against BCD while employed and for a period of one year

after his termination. Mr. Burgess acknowledged that the non-compete agreement was necessary

to protect BCD's confidential business information and that relating to its customers. Attached as

**Exhibit 5** is a copy of the Non-compete Agreement executed by Mr. Burgess.

49.     As set forth in the Non-compete Agreement, Mr. Burgess:

> [H]ereby agrees not to directly or indirectly compete with the
> business of the Company and its successors and assigns during the
> period of his employment and for a period of one (1) year following
> termination of employment and notwithstanding the cause or reason
> for termination.

Ex. 5, Burgess Non-Compete Agreement.

50.    In or around May 2025, Mr. Burgess resigned from his position and began employment with Paragon Micro in a role substantially identical to his prior position at BCD— namely, as a Business Development Manager. Since that time, Mr. Burgess has been directly competing with BCD, actively soliciting sales on behalf of Paragon Micro. Critically, he is targeting BCD's established clients, including BCD's long-term clients with whom neither Paragon Micro nor Burgess had any prior business dealings. This conduct suggests that Mr. Burgess has misappropriated proprietary customer information belonging to BCD, including its confidential customer list and/or other sensitive client data. Such information is now being improperly used to contact and solicit BCD's customers, constituting not only a breach of fiduciary duty and/or post-employment obligations, but also unlawful misappropriation of trade secrets and unfair competition.

**Paragon Micro Targets Nudo (BCD's Inside Channel Sales Manager)
in Violation of Non-Compete Agreement**

51.    In May 2016, BCD hired Mr. Nudo, who remained employed with BCD until his resignation in May 2025.

52.    During his employment at BCD, Mr. Nudo's role centered on sales and servicing BCD's long-term clients. In his position as an Inside Channel Manager he was provided with confidential information regarding client identities, client needs, client lists, pricing information, terms of service, account lists, and other information developed by BCD and obtained by BCD in furtherance of its business. Mr. Nudo, like Mr. Burgess, did not bring clients to BCD upon his arrival at the company. The clients serviced by Mr. Nudo consisted of BCD's long-term existing clients, prospective clients developed by other BCD employees, and client leads developed by other BCD employees.

53.     Because of his access to BCD's confidential information, Mr. Nudo executed a confidentiality agreement with BCD that barred him from disclosing BCD's confidential and proprietary information to third parties. Attached as **Exhibit 6** is a true and accurate copy of the confidentiality agreement ("**Nudo Confidentiality Agreement**") executed by Mr. Nudo.

54.     The Nudo Confidentiality Agreement broadly defines confidential information as the following:

> [t]echnical and business information relating to [BCD's] proprietary ideas, patentable ideas[,] copyrights and/or trade secrets, existing and/or contemplated products and services, schematics, research and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing, and current or future business plans and models, regardless of whether such information is designated as 'Confidential Information' at the time of its disclosure.

Ex. 6, Nudo Confidentiality Agreement, at § 1.

55.     Pursuant to the Nudo Confidentiality Agreement, Mr. Nudo agreed not to "disclose Confidential Information to any third party (whether an individual, corporation or other entity) without the prior written consent of [BCD]." Ex. 6 at § 4.

56.     In addition, on June 2, 2016, Mr. Nudo executed a non-compete agreement with BCD that barred him from competing against BCD while employed and for a period of one year after his termination. Mr. Nudo acknowledged that the non-compete agreement was necessary to protect BCD's confidential business information and that relating to its customers. Attached as **Exhibit 7** is a copy of the Non-compete Agreement executed by Mr. Nudo.

57.     As set forth in the Non-compete Agreement, Mr. Nudo:

> [H]ereby agrees not to directly or indirectly compete with the business of the Company and its successors and assigns during the period of his employment and for a period of one (1) year following termination of employment and notwithstanding the cause or reason for termination.

Ex. 7, Nudo Non-Compete Agreement.

58.     In or around June 2025, Mr. Nudo resigned from his position and accepted employment at Paragon Micro in a role that is substantially similar to his prior position at BCD and will result in his unfair competition against BCD in violation of the Nudo Non-Compete Agreement.

**Paragon Micro Targets Schmidt (BCD's National Account Manager)**

59.     In May 2019, BCD hired Mr. Schmidt, who remained employed with BCD until his resignation in July 2025.

60.     During his employment at BCD, Mr. Schmidt's role centered on sales and he served as BCD's National Accounts Manager. In his role, Mr. Schmidt was provided with confidential information regarding client identities, client needs, client lists, pricing information, terms of service, account lists, and other information developed by BCD and obtained by BCD in furtherance of its business.

61.     Mr. Schmidt did not bring clients to BCD upon his arrival to the company. The clients serviced by Mr. Schmidt consisted of BCD's existing clients, prospective clients developed by BCD employees, and client leads developed by BCD employees.

62.     Because of his access to BCD's confidential information, Mr. Schmidt executed a confidentiality agreement with BCD that barred him from disclosing BCD's confidential and proprietary information to third parties. Attached as **Exhibit 8** is a true and accurate copy of the confidentiality agreement ("**Schmidt Confidentiality Agreement**") executed by Mr. Schmidt.

63.     The Schmidt Confidentiality Agreement broadly defines confidential information as the following:

> [t]echnical and business information relating to [BCD's] proprietary ideas, patentable ideas[,] copyrights and/or trade secrets, existing and/or contemplated products and services, schematics, research

and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing, and current or future business plans and models, regardless of whether such information is designated as 'Confidential Information' at the time of its disclosure.

Ex. 8, Schmidt Confidentiality Agreement, at § 1.

64.    Pursuant to the Schmidt Confidentiality Agreement, Mr. Schmidt agreed not to "disclose Confidential Information to any third party (whether an individual, corporation or other entity) without the prior written consent of [BCD]." Ex. 8 at § 3.

65.    In or around July 2025, Mr. Schmidt resigned from his position and began employment with Paragon Micro in a substantially similar role. On information and belief, Mr. Schmidt has misappropriated BCD trade secrets, including its proprietary customer information, or will inevitably disclose BCD trade secrets to Paragon Micro to unfairly compete with BCD.

**Paragon Micro Targets Lingle (BCD's Strategic Accounts Solutions Specialist)**

66.    In January 2012, BCD hired Mr. Lingle, who remained employed with BCD until his resignation in July 2025.

67.    During his employment at BCD, Mr. Lingle's role centered on sales and servicing BCD's long-term clients. In his position as Strategic Accounts Solutions Specialist, he was provided with confidential information regarding client identities, client needs, client lists, pricing information, terms of service, account lists, and other information developed by BCD and obtained by BCD in furtherance of its business.

68.    Mr. Lingle did not bring clients to BCD upon his arrival to the company. The clients serviced by Lingle consisted of BCD's existing clients, prospective clients developed by BCD employees, and client leads developed by BCD employees.

69.    Because of his access to BCD's confidential information, Mr. Lingle executed a confidentiality agreement with BCD that barred him from disclosing BCD's confidential and

proprietary information to third parties. Attached as **Exhibit 9** is a true and accurate copy of the confidentiality agreement ("**Lingle Confidentiality Agreement**") executed by Lingle.

70.     The Lingle Confidentiality Agreement broadly defines confidential information as the following:

> [t]echnical and business information relating to [BCD's] proprietary ideas, patentable ideas[,] copyrights and/or trade secrets, existing and/or contemplated products and services, schematics, research and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing, and current or future business plans and models, regardless of whether such information is designated as 'Confidential Information' at the time of its disclosure.

Ex. 9, Lingle Confidentiality Agreement, at § 1.

71.     Pursuant to the Lingle Confidentiality Agreement, Mr. Lingle agreed not to "disclose Confidential Information to any third party (whether an individual, corporation or other entity) without the prior written consent of [BCD]." Ex. 9 at § 4.

72.     In addition, on June 3, 2016, Mr. Lingle executed a non-compete agreement with BCD that barred him from competing against BCD while employed and for a period of one year after his termination. Mr. Lingle acknowledged that the non-compete agreement was necessary to protect BCD's confidential business information and that relating to its customers. Attached as **Exhibit 10** is a true and correct copy of the Non-compete Agreement executed by Mr. Lingle.

73.     As set forth in the Lingle Non-compete Agreement, Mr. Lingle:

> [H]ereby agrees not to directly or indirectly compete with the business of the Company and its successors and assigns during the period of his employment and for a period of one (1) year following termination of employment and notwithstanding the cause or reason for termination.

Ex. 10, Lingle Non-Compete Agreement

74.     In or around July 2025, Mr. Lingle resigned from his position and began employment with Paragon Micro in a substantially similar role. Since that time, Mr. Lingle has been directly competing with BCD and actively soliciting sales on behalf of Paragon Micro. In violation of his contractual obligations, Mr. Lingle contacted numerous BCD customers on LinkedIn in an effort to retain their business for Paragon Micro. This conduct suggests that Mr. Lingle has misappropriated proprietary customer information belonging to BCD, including its confidential customer list and/or other sensitive client data. Such information is now being improperly used to contact and solicit BCD's customers, constituting not only a breach of fiduciary duty and/or post-employment obligations, but also unlawful misappropriation of trade secrets and unfair competition.

**Defendants' Misconduct Unlawfully Interferes with BCD's Business.**

75.     Paragon Micro retained Mr. Kozlovitser as its Director of Technology and Operations the same month that Mr. Kozlovitser resigned from his role as Chief Technology Officer for BCD.

76.     Mr. Kozlovitser's employment with Paragon Micro is in a role that is substantially similar to the position he held at BCD. This has resulted and will continue to inevitably result in Mr. Kozlovitser misappropriating BCD's confidential information and trade secrets for the benefit of Paragon Micro.

77.     Paragon Micro hired Mr. Kozlovitser because of his vast knowledge of BCD's confidential and proprietary information, including BCD's Innovation Center lab and customer relationships, which Paragon Micro is misappropriating for its own benefit. Paragon Micro also hired Mr. Kozlovitser to develop an innovation center for Paragon Micro that is, upon information and belief, substantially identical to BCD's Innovation Center, and employs the same proprietary

methodologies and processes as those developed by BCD. Mr. Kozlovitser had access to this information solely through his employment at BCD.

78.     Mr. Kozlovitser, using BCD's confidential information, including the terms of compensation for BCD's employees, has solicited several of BCD's critical employees to induce them to terminate their employment with BCD and retain them for Paragon Micro.

79.     On April 6, 2025, BCD sent a letter to Mr. Kozlovitser and Paragon Micro demanding that they cease their misappropriation of BCD's confidential and proprietary information and their unlawful interference with BCD's business. A true and correct copy of the April 6, 2025 letter is attached hereto as **Exhibit 11**.

80.     However, following this demand, Paragon Micro and Mr. Kozlovitser have continued to misappropriate BCD confidential information to hire virtually all of Mr. Kozlovitser's former team at BCD to help build out and duplicate BCD's Innovation Center and methodologies. Paragon Micro and Mr. Kozlovitser identified, and Paragon Micro hired, BCD's technical manager (Jacob Lysiak), BCD's lab supervisor (Michael Reader), and, upon information and belief, BCD's lab technologist (Matthew Anderson). Those BCD employees are in addition to the Employee Defendants (Giacomini, Nudo, Kozlovitser, Schmidt, and Lingle).

81.     Further, Defendant Paragon Micro, using BCD's former employees, have misappropriated BCD confidential information to unlawfully interfere with BCD's customer relationships and business. In fact, at least one BCD customer informed BCD that it is terminating their customer relationship with BCD to become a customer of Paragon Micro because of the information now possessed by Paragon Micro through BCD's former employees.

82.     Similarly, as with Mr. Kozlovitser, Paragon Micro hired Mr. Giacomini the same month that he resigned from BCD. In fact, Giacomini's last day at BCD was April 11 (Friday) and,

based upon information and belief, he was already working for Paragon Micro by April 14, 2025 (Monday).

83.     Paragon Micro retained Mr. Giacomini because of his access to BCD's confidential and proprietary information, which Paragon Micro could misappropriate for its own benefit. Further, Mr. Giacomini is employed in a role at Paragon Micro that is substantially similar to the position he held at BCD. Accordingly, he will inevitably disclose and/or misappropriate BCD confidential information and trade secrets for the benefit of Paragon Micro.

84.     Indeed, despite receiving a written reminder of his confidentiality obligations to BCD on April 11, 2025, following his resignation from BCD, Mr. Giacomini retained possession of a laptop computer (the "**Laptop**") containing BCD confidential information. The Laptop was Giacomini's primary device used for work on behalf of BCD and was therefore subject to the terms of the Giacomini Confidentiality Agreement. The Laptop contained confidential information including internal and external communications, customer information, pricing information, client data, contractual terms, technical data, supplier agreements and other BCD confidential information.

85.     On April 27, 2025, BCD sent a letter to Mr. Giacomini demanding that he make the Laptop available to BCD for forensic examination to identify and remove all of BCD's confidential or proprietary information. This letter is attached hereto as **Exhibit 12**.

86.     To date, Mr. Giacomini has refused to make the Laptop available to BCD to conduct forensic imaging of the device or to otherwise permit the removal of BCD's information from the device.

87.     Mr. Giacomini has misappropriated BCD's confidential information and trade secrets. If he remains in possession of BCD's trade secrets, he will continue to misappropriate them for the benefit of Paragon Micro.

88.     Mr. Lingle, in violation of his non-compete agreement with BCD, has also misappropriated BCD's confidential information and trade secrets for the benefit of Paragon Micro. Shortly after resigning from BCD in July 2025, Mr. Lingle solicited numerous long-term BCD customers to attempt to retain their business for Paragon Micro. Mr. Lingle has therefore already shown his willingness to breach his non-compete agreement to unfairly compete with BCD and will inevitably disclose and/or misappropriate additional BCD confidential information and trade secrets for the benefit of Paragon Micro.

## COUNT I – BREACH OF CONTRACT

### (Against the Employee Defendants)

89.     The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

90.     The Confidentiality Agreements, Non-Compete Agreements, the Kozlovitser Consulting Agreement and Employee Handbook that the Employee Defendants executed constitute valid and enforceable agreements. (Exs. 1-10)

91.     BCD performed all the duties and obligations it agreed to and owed the Employee Defendants under the Confidentiality Agreements, Non-Compete Agreements, Kozlovitser Consulting Agreement and Employee Handbook.

92.     Under the Non-Compete Agreements, Defendants Burgess, Nudo, and Lingle agreed that they would not "compete with the business of the Company [BCD] and its successors and assigns during the period of employment and for a period of one year following termination notwithstanding the cause or reason for termination." (See Exs. 5, 7, and 10.) Defendants Burgess,

Nudo, and Lingle have breached those agreements. They have accepted employment at Paragon Micro, which is a competitor of BCD, within one year of their termination of employment and have been hired to compete directly against BCD in violation of their Non-Compete Agreements. Moreover, Defendants Burgess and Lingle are already soliciting BCD's long-term customers and diverting business away from BCD to Paragon Micro.

93. Under the Confidentiality Agreements and Kozlovitser Consulting Agreement, each of the Employee Defendants are required not to "disclose Confidential Information to any third party (whether an individual, corporation or other entity) without the prior written consent of [BCD]." (*See* Ex. 2. at 2; Ex. 4 at § 4; Ex. 8 at § 3; Ex. 9 at § 4.)

94. Pursuant to the Employee Handbook, each of the Employee Defendants were prohibited from revealing confidential information "outside the Company without prior approval of an executive officer of the Company." (*See* Ex. 1, at 13.)

95. On information and belief, in breach of the Employee Handbook, Non-Compete Agreements, Confidentiality Agreements, and Kozlovitser Consulting Agreement, the Employee Defendants disclosed BCD's confidential and trade secrets to Paragon Micro and misappropriated BCD's confidential information and trade secrets to solicit employees, divert customers away from BCD and retain them for Paragon Micro, and to otherwise unfairly compete against BCD.

96. The Employee Defendants will undoubtedly continue to disclose and misappropriate BCD's confidential information and trade secrets for the benefit of Paragon Micro.

97. Because of the Defendant Employees' breaches and prospective breaches of the Employee Handbook, Confidentiality Agreements, Non-Compete Agreements and Kozlovitser Consulting Agreement, BCD has been irreparably injured and continues to face irreparable injury. BCD is threatened with losing the value of its confidential and proprietary information and its

employee and customer relationships, along with income and goodwill, for which a remedy at law is inadequate.

WHEREFORE, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) preliminarily and permanently enjoining Defendants Burgess Nudo, and Lingle from competing against BCD during the duration of their non- compete agreements and equitably extending the period in which they are barred from doing so to account for the period in which they have been in violation; (ii) preliminarily and permanently enjoining Defendants Paragon Micro and the Employee Defendants from misappropriating BCD confidential information and proprietary information and trade secrets to unfairly compete with BCD and improperly soliciting employees and business away from BCD and retain them for Paragon Micro; (iii) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of Defendants' actions, (iv) providing such other and further relief the Court deems just and proper.

### COUNT II– MISSAPROPRIATION OF TRADE SECRETS IN VIOLATION OF FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831, et seq., AND THE ILLINOIS UNIFORM TRADE SECRETS ACT, 765 ILCS 1065/1, et seq., (Against All Defendants)

98. The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

99. BCD's confidential and proprietary information includes, *inter alia*, BCD's (a) confidential information regarding the development and management of BCD's Innovation Center, which is used to manufacture, test, and optimize BCD products; (b) confidential supplier and vendor pricing and information; (c) confidential information regarding BCD's employees; (d) confidential client data; (e) confidential pricing and terms of service between BCD and its

customers; (e) confidential technical data; and (g) other sensitive, non-public information about BCD, its business, its customers, and its employees.

100.    This information constitutes trade secrets, pursuant to the Federal Defend Trade Secrets Act, 18 U.S.C. §1831, et seq. ("**DTSA**") and the Illinois Uniform Trade Secret Act, 765 ILCS 1065/1, et seq. ("**ITSA**"), because BCD derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

101.    BCD has made reasonable efforts to safeguard its trade secrets, including requiring the Employee Defendants and other employees to sign confidentiality agreements, marking documents as confidential, and restricting access to computerized information to prohibit the unauthorized disclosure of BCD's trade secrets. BCD has also sent correspondence to Defendants Paragon Micro, Kozlovitser, and Giacomini demanding they cease misappropriating BCD's confidential information. (Exs. 11-12).

102.    Defendants have actually misappropriated, threatened to misappropriate, or will inevitably disclose BCD's trade secrets without its consent, in violation of the DTSA and ITSA, which allows injunctive relief for actual or threatened misappropriation of trade secrets. Moreover, as discussed above, the Employee Defendants cannot maintain substantially similar positions with Defendant Paragon Micro to the roles held at BCD without inevitably utilizing and disclosing BCD's confidential information and trade secrets to Paragon Micro.

103.    Specifically, as discussed above, on information and belief the Employee Defendants are misappropriating and disclosing to Paragon Micro or will misappropriate and disclose BCD's trade secrets to Paragon Micro relating to, at a minimum, the development and

management of BCD's Innovation Center, which is used to manufacture, test, and optimize BCD products, internal and external communications, customer information, employee information, pricing information, customer relationship and customer preference information, contract terms, technical data, and supplier agreements, to unfairly compete against BCD, all information which the Employee Defendants received in their former positions with BCD.

104.    Further, Paragon Micro knew or should have known that the information the Employee Defendants had and were using constituted BCD trade secrets.

105.    Defendants' actions are willful and malicious.

106.    Defendants are being or will be unjustly enriched by their misappropriation of BCD's trade secrets and, unless restrained, Defendants will continue to use, disclose, and otherwise misappropriate BCD's trade secrets.

107.    Because Defendants' misconduct is ongoing and it poses a threat of significant irreparable harm that cannot be compensated by money alone, BCD requests that this Court grant injunctive relief against Defendants from actual or threatened disclosure or misappropriation of BCD's trade secrets, in addition to granting BCD actual, incidental, compensatory, punitive, exemplary and consequential damages, and including attorneys' fees and costs.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) preliminarily and permanently enjoining Defendant Paragon Micro and the Employee Defendants from misappropriating BCD confidential information and proprietary information and trade secrets to unfairly compete with BCD and improperly solicit employees and business away from BCD and retain them for Paragon Micro; (ii) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of Defendants' actions; (iii)

- 25 -

awarding punitive damages against Defendants; (iv) awarding attorney's fees and costs to BCD; and (v) providing such other and further relief the Court deems just and proper.

### COUNT III – UNFAIR COMPETITION

### (Against All Defendants)

108.    The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

109.    Defendants took the foregoing acts to gain an unfair competitive advantage over BCD.

110.    Defendants willfully undertook the foregoing acts with knowledge of and disregard for BCD's rights, and with the intention of causing harm to and/or attempt to harm BCD and benefitting itself.

111.    Defendants are unfairly competing in the marketplace and their actions are willful and malicious.

112.    As a result of Defendants' unfair competition, including the targeting and hiring of BCD employees en masse and then placing those employees in substantially similar roles to compete against BCD and the targeting and hiring of BCD employees in violation of their non-compete agreements, BCD has been injured and faces irreparable injury. BCD is threatened with losing customers, employees, technology, its competitive advantage, its trade secrets and confidential information, and goodwill in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by order of this court. In addition to a remedy at equity, BCD seeks actual, incidental, compensatory, punitive, exemplary, and consequential damages, and including attorneys' fees and costs.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) enjoining Defendants Paragon Micro and

the Employee Defendants from raiding BCD's employees and placing them in substantially similar positions to improperly solicit business away from BCD and retain it for Paragon Micro; (ii) enjoining Defendants Burgess, Nudo, and Lingle from competing against BCD during the duration of their non-compete agreements or from otherwise violating their employment agreements; (iii) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of Defendants' actions; (iv) awarding punitive damages against Defendants; and (v) providing such other and further relief the Court deems just and proper.

### COUNT IV– TORTIOUS INTERFERENCE WITH CONTRACT

### (Against All Defendants)

113.    The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

114.    Until events giving rise to this action, BCD maintained valid and enforceable employment agreements with each of the Employee Defendants ("**Employment Agreements**"). BCD had a reasonable expectation that these Employment Agreements would continue and not be unjustly disrupted. The Employee Defendants were aware of these Employment Agreements, and, upon information and belief, Paragon Micro was and remains aware of these agreements (i) the Employee Defendants held public facing sales roles and Paragon Micro, as a competitor, was aware of their employment relationship with BCD and/or (ii) Paragon Micro became aware of the Employment Agreements through its vetting of the Employee Defendants for positions with the company.

115.    Notwithstanding their knowledge of the existence of the Employment Agreements, Defendants intentionally and unjustifiably interfered with BCD's employee relationships by inducing BCD employees to terminate their Employment Agreements (including

at-will contracts) with BCD. Moreover, Paragon Micro intentionally and unjustifiably induced BCD employees to breach their Employment Agreements and to take employment with Paragon Micro and compete against BCD in violation of those agreements, including Employee Defendants bound by explicit non-compete agreements.

116.    BCD has invested significant resources into the training and development of each of its employees.

117.    Defendants' conduct was willful and malicious and done in flagrant disregard of BCD's rights.

118.    As a result of Defendants' tortious interference with BCD's Employment Agreements and relationships, BCD has been injured and faces irreparable injury. BCD is threatened with losing employees, its competitive advantage and goodwill in amounts which may be impossible to determine, unless Defendants are permanently enjoined and restrained by order of this Court, in addition to all remedies available at law. In addition to a remedy at equity, BCD seeks actual, incidental, compensatory, punitive, exemplary and consequential damages, and including attorneys' fees and costs.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) enjoining Defendants Paragon Micro and the Employee Defendants from inducing BCD employees to terminate their employment agreements with BCD, (ii) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of Defendants' actions, (iii) awarding punitive damages against Defendants and (iv) providing such other and further relief the Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against All Defendants)

119.    The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

120.    At all relevant times, BCD has maintained relationships with its employees and its customers.

121.    BCD had a reasonable expectation of maintaining its relationships with its customers because BCD has invested time, efforts, funds and other resources in developing and maintaining those relationships.

122.    BCD likewise had a reasonable expectation that it would continue to employ its employees and that these employees would not resign to join a direct competitor, and directly compete against BCD given the significant investments in time, efforts, funds and resources BCD has invested in developing its employees.

123.    Because the Employee Defendants are former employees of BCD, they were and remain aware of BCD's employee relationships.

124.    Because Paragon Micro is a competitor of BCD, it was and remains aware of BCD's publicly facing employees and BCD's customer relationships. Paragon Micro systematically pilfered BCD's key personnel, including by recruiting the Employee Defendants to engage in a deliberate scheme to misappropriate BCD's confidential and proprietary customer information for Paragon Micro's use and benefit. This information includes client identities, client needs, client lists, pricing information, terms of service, and other confidential business information developed by BCD. The Employee Defendants intentionally and methodically left BCD and took this

confidential and proprietary customer information for the purpose of soliciting BCD's customers away from BCD and to Paragon Micro to establish it as a competitor of BCD.

125.    Notwithstanding their knowledge of BCD's relationships with its employees and customers, Defendants intentionally, willfully, and without justification, interfered with BCD's customer and employee relationships by (i) inducing BCD's employees to breach their Employment Agreements with BCD, including employees with valid non-compete agreements and (ii) employing former BCD employees, en masse, to solicit BCD's long-term customers to retain their business for Paragon Micro, a direct competitor of BCD.

126.    As a result of Defendants' tortious interference with BCD's prospective economic advantages, BCD has been injured and faces irreparable injury. BCD is threatened with Defendants' continued efforts to induce BCD's employees to terminate their Employment Agreements with BCD and to solicit BCD's long-term customers for the benefit of Paragon Micro unless Defendants are permanently enjoined and restrained by order of this Court, in addition to all remedies available at law. In addition to a remedy at equity, BCD seeks actual, incidental, compensatory, punitive, exemplary and consequential damages, and including attorneys' fees and costs.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) enjoining Defendants Paragon Micro and the Employee Defendants from inducing BCD's employees to breach their Employment Agreements with BCD, (ii) enjoining Defendants Paragon Micro and the Employee Defendants from soliciting BCD's long-term customers, (iii) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD

sustained as a result of Defendants' actions, (iv) awarding punitive damages against Defendants and (v) providing such other and further relief the Court deems just and proper.

## COUNT VI – CIVIL CONSPIRACY

### (Against All Defendants)

127.    The allegations of Paragraphs 1 through 126 and 136-143 are restated and incorporated by reference as if fully set forth herein.

128.    On information and belief, beginning as early as February 2025, Defendants did knowingly and willfully conspire and agree among themselves to: (a) breach the Non-compete Agreements; (b) induce employees of BCD to terminate their employment with BCD and retain them for Paragon Micro and (c) and solicit BCD customers and induce them to terminate their relationships with BCD and retain them as customers of Paragon Micro.

129.    In furtherance of this conspiracy, Paragon Micro hired each of the Employee Defendants to divert business away from BCD and retain it for Paragon Micro and to otherwise unfairly compete against BCD.

130.    As part of the conspiracy, Paragon, using BCD's former employees, has contacted BCD customers and induced them to terminate their relationships with BCD and become customers of Paragon Micro.

131.    All Defendants were willing and intentional participants in the joint activity.

132.    These actions by Defendants were in violation of BCD's rights and committed in furtherance of the conspiracy and agreement.

133.    As a direct and proximate result of the conspiracy and agreement to breach the Employee Defendants' Employment Agreements and Non-Compete Agreements, BCD has suffered significant damage.

134.    Defendants' conduct was undertaken with malicious and willful intent.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) enjoining Defendants Paragon Micro and the Employee Defendants from conspiring to induce BCD employees to breach their Employment Agreements with BCD, including those with valid and enforceable Non-Compete Agreements, (ii) enjoining Defendants Paragon Micro and the Employee Defendants from improperly soliciting business away from BCD and retain it for Paragon Micro, (iii) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of Defendants' actions, (iv) awarding punitive damages against Defendants and (v) providing such other and further relief the Court deems just and proper.

## COUNT VII -- BREACH OF FIDUCIARY DUTY

### (Against the Employee Defendants)

135.    The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

136.    At all times relevant to this action, the Employee Defendants were employees of BCD and owed certain fiduciary duties to BCD including the duty of loyalty and good faith.

137.    By taking BCD's confidential information and using the information for the benefit of a competitor, the Defendant Employees breached their fiduciary duties and caused harm to BCD.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) awarding damages in favor of BCD against the Employee Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of the Employee Defendants' actions, (ii) awarding punitive damages against the Employee Defendants and (iv) providing such other and further relief the Court deems just and proper.

## COUNT VIII – INDUCEMENT OF BREACH OF FIDUCIARY DUTY

### (Against Paragon Micro)

138.     The allegations of Paragraphs 1 through 88 are restated and incorporated by reference as if fully set forth herein.

139.     At all times relevant to this action, the Employee Defendants were employees of BCD and owed certain fiduciary duties to BCD including the duty of loyalty and good faith. By taking BCD's confidential information and using the information for the benefit of a competitor, the Defendant Employees breached their fiduciary duties and caused harm to BCD.

140.     Because the Employee Defendants were known by Paragon Micro to be employees of BCD, Paragon Micro was aware that they owed fiduciary duties to BCD in the course and scope of their employment, including with respect to confidential information of BCD that the Employee Defendants possessed or of which they had knowledge.

141.     Defendant Paragon Micro targeted BCD's employees who had knowledge of BCD's confidential information, induced them to leave BCD, and placed BCD's former employees in substantially similar roles at Paragon Micro so that they could and would use BCD's confidential information for the benefit of Paragon Micro and to injure BCD.

142.     Paragon Micro has received the benefit of these breaches in that BCD's information is now being used for the benefit of Paragon Micro.

**WHEREFORE**, BCD respectfully requests that the Court enter judgment in its favor, award all relief available including but not limited to (i) awarding damages in favor of BCD against Defendants sufficient to compensate BCD for the economic and non-economic damages BCD sustained as a result of Defendants' actions, (ii) awarding punitive damages against Defendants and (iv) providing such other and further relief the Court deems just and proper.

## JURY TRIAL DEMAND

143.    BCD hereby demands a jury trial on all issues so triable.

Dated: September 3, 2025                    Respectfully submitted,

                                            By: /s/ *James C. Bookhout*
                                            Counsel for Plaintiffs

                                            James C. Bookhout (*pro hac vice*)
                                            Mario D. Robertson
                                            Benjamin C. Levine
                                            KATTEN MUCHIN ROSENMAN LLP
                                            525 West Monroe Street
                                            Chicago, Illinois 60661
                                            Telephone: 312-902-5200
                                            Facsimile: 312-902-1061
                                            james.bookhout@katten.com
                                            mario.robertson@katten.com
                                            benjamin.levine@katten.com
                                            Firm No. 41832