# Exhibit 44

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**
**NINETEENTH JUDICIAL CIRCUIT COURT, CHANCERY DIVISION**

| | |
|---|---|
| CDW LLC and<br>CDW DIRECT LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>TODD TWEEDY and<br>PARAGON MICRO INC., an Illinois<br>Corporation<br><br>        Defendants. | 10 CH 3627<br><br>Case No. _____<br><br>F I L E D<br>JUN 30 2010 |

**VERIFIED COMPLAINT FOR**
**INJUNCTIVE AND OTHER RELIEF**

Plaintiffs CDW LLC and CDW Direct LLC (collectively "CDW"), by its attorneys

Perkins Coie LLP, brings this action against its former employee, Todd Tweedy ("Tweedy"), and

his new employer, Paragon Micro Inc. ("Paragon Micro"), and for its Verified Complaint, CDW

states as follows:

**Preliminary Statement**

1.    Defendant Paragon Micro is competitor of CDW specializing in providing

information technology products and services to businesses and other consumers. Over the past

few months, Paragon Micro has engaged in a coordinated scheme to lure CDW's account

managers to Paragon Micro, including but not limited to Defendant Tweedy, Shane Dugger, and

Aaron Johnson. In connection with discovery obtained in connection with two matters pending

before this Court[1], CDW recently learned that Paragon Micro wrongfully obtained confidential

CDW information and trade secrets, encouraged former CDW coworkers to violate their

---

[1]     *CDW LLC et al. v. Shane Dugger*, Case No. 10 CH 2201 ("Dugger Litigation"), and *CDW LLC et al.*
*v. Aaron Johnson*, Case No. 10 CH 2411 ("Johnson Litigation").

43878-0060/LEGAL18605089.3

BCD0015029

contractual confidentiality and customer non-solicitation obligations, and tortiously interfered with certain confidentiality agreements between CDW and certain former coworkers.

2.     With respect to Defendant Todd Tweedy, CDW believes that Paragon Micro began recruiting him in early 2010.  On April 2, 2010, Defendant Tweedy resigned from his position as a CDW account manager.  CDW recently learned that Tweedy became a Paragon Micro employee on or about April 19, 2010.  Prior to Tweedy's resignation, former CDW coworker Shane Dugger (who resigned from CDW on April 1, 2010) sent emails containing confidential CDW customer information to Tweedy's personal Yahoo account.  Tweedy has not returned this information to CDW.  Moreover, on the morning of his resignation, Tweedy forwarded a significant amount of CDW confidential information and trade secrets from his CDW email account to his Yahoo email account.  Tweedy's misconduct constitutes not only a clear breach of his contractual confidentiality obligations to CDW, but a violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS §§ 1065/1, *et seq*.  CDW believes that Tweedy and Paragon Micro have used this information to improperly solicit CDW customers in violation of Tweedy's three-month customer non-solicitation clause found in his Confidentiality and Non-Solicitation Agreement (attached as Exhibit A).

3.     Accordingly, CDW seeks preliminary and permanent injunctive relief against Paragon Micro and Tweedy to prevent them from (1) using, disclosing, and/or divulging any of CDW's trade secrets or confidential information; and (2) soliciting or servicing any CDW customers who Tweedy, Dugger, or Johnson called on while at CDW.  In addition to injunctive relief, CDW seeks an award of damages and attorneys' fees against Paragon Micro for its tortious interference with contract, unfair competition, and trade secret misappropriation.  Similarly, CDW seeks an award of damages and attorneys' fees against Tweedy to compensate

BCD0015030

CDW for injuries suffered as a result of his misapprpriation of CDW's trade secrets and confidential information, breach of contractual obligations with CDW, breach of his duty of loyalty to CDW, and tortious interference with CDW's prospective business advantage.

### Parties and Related Entities

4.     CDW LLC, formerly CDW Corporation, is an Illinois Limited Liability Company with its principal place of business in Vernon Hills, Illinois.  CDW Direct LLC is a subsidiary of CDW LLC and is also an Illinois Limited Liability Company.  CDW is a leading provider of technology solutions to businesses, educational, healthcare, and governmental institutions.

5.     Paragon Micro is an Illinois Corporation with a principal place of business in Lake Zurich, Illinois.

6.     Todd Tweedy is an individual, who resides at 6n447 Virginia, Roselle, Illinois 60172.

7.     Tweedy resigned from CDW as an account manager on or about April 2, 2010.

8.     Upon information and belief, Tweedy became employed at Paragon Micro on or about April 19, 2010 in a sales capacity.

### Jurisdiction and Venue

9.     This Court has personal jurisdiction over Paragon Micro and Tweedy pursuant to 735 ILCS 5/2-209.  In addition, Tweedy's contractual relationship with CDW that is at issue in this case is substantially connected to the State of Illinois.

10.     Venue properly lies with this Court pursuant to 5/2-101 of the Illinois Code of Civil Procedure in that the transaction or some part thereof out of which the cause of action arose occurred in Lake County.

BCD0015031

### The Business of CDW and Paragon Micro

11.    CDW provides and sells technology products and services to businesses, educational and government institutions. CDW is headquartered in Vernon Hills, Illinois.

12.    CDW sells technology products and services through Account Managers who strive to tailor specific technology solutions to satisfy CDW's customers' particular needs. Account Managers have access to CDW product cost information, which they use to develop pricing and margin strategies, negotiate sales, set prices, and make other important decisions regarding CDW's relationships with its customers. In maintaining its customer relationships, CDW spends millions of dollars each year to develop its customer relationships. CDW's customer relationships can take years to develop and require an in depth understanding of the customer's business operations and technology needs gained through extensive interaction with CDW's customers.

13.    Like CDW, Paragon Micro offers and sells technology products. Paragon Micro was incorporated in 2003 and founded by former CDW account managers.

14.    Jeff Reimer, a former CDW account manager, is Paragon Micro's President of Global Operations. Mr. Reimer terminated his employment with CDW on or about January 3, 2008.

### Tweedy's Employment History with CDW

15.    On November 7, 1994, CDW hired Tweedy as Sales Trainee. Shortly thereafter, Tweedy became an account manager at CDW.

16.    Until April 2, 2010, Tweedy was employed by CDW as an account manager. As an Account Manager, Tweedy participated in CDW's "College of Sales" and received additional formal training during his tenure at CDW.

BCD0015032

17. At the time he resigned, Tweedy remained an account manager and was assigned customers with whom he transacted business.

### Tweedy Signed A Confidentiality and Non-Solicitation Agreement

18. In consideration of his employment with CDW, salary, commissions, and access to and use of CDW's confidential information, Tweedy executed a Confidentiality and Non-Solicitation Agreement ("Agreement") on or about February 20, 2004. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

19. Pursuant to Paragraph 1 of the Agreement, Tweedy promised, in part, not to "disclose or use at any time, either during or after your employment by the Company, any Confidential Information, except to the extent such disclosure or use is required in the performance of your duties for the Company."

20. Under the Agreement, Tweedy also agreed to "take all appropriate steps to safeguard Confidential Information and to protect it against disclosure or misuse."

21. Pursuant to Paragraph 1 of the Agreement, in the event Tweedy's employment with CDW terminated, he promised to return to CDW "all written or recorded material (in any format whatsoever, including computerized) obtained through [his] employment including, but not limited to, customer lists, correspondence, files, records, or any other document or record containing Confidential Information."

22. Pursuant to Paragraph 3 of the Agreement, Tweedy acknowledged that CDW's relationships with its customers are important for the combined success of the Company. To protect these relationships, Tweedy agreed that for a period of three (3) months after his employment with CDW terminated, he would not "on behalf of any of the Company's competitors (including, without limitation, any organization or entity that you may start or

BCD0015033

become affiliated with) directly or indirectly solicit or otherwise contact in any way any customer or prospective customer of the Company with which you had contact while employed by the Company."

23.    Under the Agreement, Tweedy agreed that CDW shall be entitled, in addition to any other remedy available to it, to a court order restraining or preventing an actual or threatened violation of the Agreement. Tweedy further promised to consent and agree to the issuance of such an order.

24.    The geographic boundaries, scope of prohibited activities, and time duration of the Agreement are reasonable in nature and are not broader than necessary to protect CDW's legitimate protectable interests.

### CDW's Trade Secrets and Confidential Information

25.    CDW notified Tweedy and he agreed that the following constituted confidential information of CDW ("Confidential Information"): trade secrets, know-how, inventions, patents and trademarks, copyrights, business development, marketing and sales programs, purchasing manners and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, financial data, regulatory approval strategies, results of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product development strategies and processes, safety information, programs and protocols, product design and related items used by CDW in its business.    Paragon Micro and Mr. Reimer were also aware that CDW considered the information identified above to be confidential.

BCD0015034

26. Under the Agreement, Tweedy agreed that it was his duty and obligation to preserve and protect CDW's Confidential Information during and after his employment with CDW.

27. CDW developed its Confidential Information over a significant period of time and at great expense. This information is not known outside of CDW and is valuable to the Company because of its secrecy.

28. CDW protects its Confidential Information with levels of secrecy sufficient for CDW to derive economic value from its non-disclosure to other persons who would obtain economic value from the disclosure of the Confidential Information. If competitors like Paragon Micro, obtained CDW's trade secrets and other confidential information, they would be able to unfairly bid against CDW.

29. CDW has protected the secrecy of its Confidential Information through several means, including: (a) requiring employees to sign agreements containing confidentiality provisions; (b) discussing CDW's confidentiality policies with its employees at the time of hire; (c) requiring employees, such as Tweedy, to sign post-employment restrictive covenants; (d) limiting access to confidential information and monitoring who is given access to such information; (e) password protecting all computers; (f) instructing personnel not to disclose confidential information to persons outside of CDW both during and after their employment; (g) prohibiting the disclosure of confidential information in CDW's employment policies; (h) requiring all confidentiality and proprietary materials to be returned whenever an employee terminates his or her employment; (i) requiring the execution of non-disclosure agreements prior to the distribution of relevant, limited information to its customers; (j) programming computer systems to lock automatically if they remain idle for more than a few minutes; (k)

BCD0015035

prohibiting the use of personal cameras at any time on CDW property; and (l) restricting employee access to CDW's corporate customers' account databases.

30.    Paragon Micro was aware that Tweedy, Mr. Dugger, and Mr. Johnson had confidentiality obligations under their respective Confidentiality and Non-Solicitation Agreements.

### Paragon's Recruitment of Shane Dugger

31.    In February of 2010, Mr. Reimer, Mr. Dugger, and Tweedy went on hunting trip in Texas. At the time of this hunting trip, Mr. Dugger and Mr. Tweedy were both employed by CDW as account managers.

32.    During this hunting trip, Mr. Reimer told Mr. Dugger that he would "love" to have Mr. Dugger at Paragon Micro.

33.    Upon information and belief, after the hunting trip, Mr. Reimer directed two Paragon Micro account executives, who also once worked at CDW as account managers, Jeff Tipps and Matt Ricks to recruit Mr. Dugger to Paragon Micro.

34.    On March 10, 2010, Mr. Ricks and Mr. Tipps then invited Mr. Dugger to a Paragon Micro "Opportunity" meeting at the home of Mr. Ricks.

35.    In March 2010, Mr. Dugger forwarded CDW trade secrets and confidential information to his personal email account (xxxxx.xxxxxx@gmail.com). Mr. Dugger also forwarded several of these documents to Mr. Tweedy's personal email account (xxxxxxx@yahoo.com).

36.    In March 2010, while still a CDW employee, Mr. Dugger diverted CDW business to Paragon Micro.

37.    On April 1, 2010, Mr. Dugger resigned from CDW.

BCD0015036

### Paragon's Recruitment of Aaron Johnson

38. In early 2010, Mr. Reimer began recruiting Mr. Johnson to leave his position as a CDW account manager to join Paragon Micro as a Global Account Manager.

39. On or about March 2, 2010, Mr. Reimer provided Mr. Johnson with a written offer letter for the position of Global Account Manager at Paragon Micro.

40. Prior to resigning from CDW, Mr. Johnson informed Paragon Micro that he would accept this position.

41. On March 30, 2010, Mr. Johnson forwarded CDW trade secrets and confidential information to his personal email account (xxxxxxxxxxxx@yahoo.com).

42. On April 2, 2010, Mr. Johnson resigned from CDW.

43. On or about April 5, 2010, Mr. Johnson emailed Mr. Tipps and Mr. Ricks CDW information for one of Mr. Johnson's CDW customers, Houlihan Lokey.

44. On or about April 30, 2010, Mr. Johnson advised Mr. Tipps and Mr. Ricks in an email to "close" a deal for another CDW customer, United-Bilt Homes, LLC.

45. On May 3, 2010, Paragon Micro invited Mr. Johnson to its offices. Johnson accepted this invitation and "shadowed" two Paragon Micro account representatives during this visit.

46. Upon information and belief, Mr. Johnson met with Mr. Ricks and Mr. Tipps on May 3, 2010.

### Paragon's Recruitment of Tweedy, Tweedy's Departure, and Tweedy's Pre-Termination and Post-Termination Activities

47. Upon information and belief, in early 2010, Mr. Reimer began recruiting Tweedy to leave his position as CDW account manager to join Paragon Micro in a sales capacity.

BCD0015037

48.    Upon information and belief, during the hunting trip identified above in Paragraph 31, Mr. Reimer and Tweedy further discussed employment opportunities at Paragon Micro.

49.    Upon information and belief, after the hunting trip, Mr. Reimer directed two Mr. Tipps and Mr. Ricks to recruit Tweedy to Paragon Micro.

50.    Upon information and belief, prior to April 2, 2010, Tweedy advised Mr. Reimer that he would accept a sales position with Paragon Micro.

51.    On the evening of March 9, 2010, Mr. Tweedy received several emails at his personal email account (xxxxxxx@yahoo.com) from Mr. Dugger containing CDW trade secrets and customer information.

52.    On the morning of April 2, 2010 around 7:00 a.m., Tweedy forwarded spreadsheets and other documents which contain CDW confidential information and trade secrets from his CDW email account to his personal email account (xxxxxxx@yahoo.com).

53.    Tweedy later resigned from CDW as an account manager on April 2, 2010.

54.    In a letter dated April 2, 2010, CDW reminded Tweedy of his post-employment confidentiality and non-solicitation obligations (*See* April 2, 2010 correspondence attached hereto as Exhibit B).

55.    Tweedy, however, failed to return to CDW all written or recorded material obtained through his employment, including the spreadsheets and customer information he sent to his personal email account, customer lists, correspondence, files, and records containing confidential information and is using his information in connection with his work for a competitor.

56.    Tweedy has used and continues to use CDW's Confidential Information for his own benefit, including the CDW materials identified above.

43878-0066/LEGAL18603689.3                                10

BCD0015038

57.     Upon information and belief, on behalf of Paragon Micro, Tweedy has contacted and solicited the businesses of the CDW customers identified in the documents Mr. Dugger forwarded to Tweedy's personal email account (xxxxxxx@yahoo.com) on March 9, 2010.

58.     Upon information and belief, on behalf of Paragon Micro, Tweedy has contacted and solicited businesses from CDW customers identified in the documents he forwarded to his personal email account (xxxxxxx@yahoo.com) on April 2, 2010.

59.     Upon information and belief, on behalf of Paragon Micro, Tweedy has contacted and solicited the businesses of the CDW customers who Mr. Dugger and Mr. Johnson called on while employed by CDW.

60.     Upon information and belief, both before and after his resignation from CDW, Tweedy has solicited and encouraged other CDW employees to resign.

### Paragon Micro's Misconduct

61.     Upon information and belief, Paragon Micro, through Mr. Reimer, Mr. Ricks, and Mr. Tipps, encouraged and directed Tweedy to forward confidential CDW information and trade secrets to his personal email account (xxxxxxx@yahoo.com) for the benefit of Paragon Micro.

62.     Upon information and belief, Paragon Micro, through Mr. Reimer, Mr. Ricks, and Mr. Tipps, encouraged and directed Mr. Johnson to forward confidential CDW information and trade secrets to his personal email account (xxxxxxx@yahoo.com) for the benefit of Paragon Micro.

63.     Upon information and belief, Paragon Micro, through Mr. Reimer, Mr. Ricks, and Mr. Tipps, encouraged and directed Mr. Dugger to forward confidential CDW information and

BCD0015039

trade secrets to his personal email account (xxxxxxx@gmail.com) for the benefit of Paragon Micro.

64.     On or about April 5, 2010, Mr. Ricks and Mr. Tipps received and reviewed CDW information from Mr. Johnson's personal email account (xxxxxxx@yahoo.com) relating to CDW customer Houlihan Lockey.

65.     Paragon Micro has contacted and solicited the business of the CDW customers Tweedy, Mr. Dugger, and Mr. Johnson called on while account managers at CDW

66.     For example, United-Bilt Homes ("UBH") was one of Mr. Johnson's largest CDW customers.

67.     On March 30, 2010 at 3:25 p.m., just two days before his resignation, Mr. Johnson forwarded to his personal email account (xxxxxxx@yahoo.com) a spreadsheet containing UBH's CDW purchase history from 2005 to 2010.

68.     On April 30, 2010 at approximately 10:57 a.m., Mr. Tipps and Mr. Ricks emailed and solicited UBH to purchase certain IT products from Paragon Micro.

69.     Mr. Tipps and Mr. Ricks "blind copied" Mr. Johnson on this email.

70.     Mr. Johnson then advised Mr. Tipps and Mr. Ricks to "close it."

71.     Upon information and belief, Paragon Micro sold UBH the IT products identified in the April 30 correspondence between UBH and Paragon Micro.

## COUNT I
## TORTIOUS INTERFERENCE WITH CONTRACT (PARAGON MICRO)

72.     CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 of the Verified Complaint.

73.     Tweedy, Mr. Dugger, and Mr. Johnson were and are parties to a Confidentiality and Non-Solicitation Agreement with CDW.  Tweedy's Confidentiality and Non-Solicitation

BCD0015040

Agreement is attached hereto as Exhibit A. Mr. Dugger's Confidentiality and Non-Solicitation Agreement is attached hereto as Exhibit C. Mr. Johnson's Confidentiality and Non-Solicitation Agreement is attached hereto as Exhibit D.

74. At all relevant times, Paragon Micro had knowledge of these agreements and the continuing obligations under such agreements.

75. Without justification, Paragon Micro induced or otherwise encouraged, assisted and facilitated Tweedy, Mr. Dugger, and Mr. Johnson in breaching their respective contractual confidentiality, customer non-solicitation, employee non-solicitation, and the return of confidential information obligations under the employment agreements.

76. By its conduct, as alleged herein, Paragon Micro wrongfully interfered with CDW's contractual relationship with Tweedy, Mr. Dugger, and Mr. Johnson.

77. Paragon Micro's tortious interference with CDW's contractual relationship with Tweedy, Mr. Dugger, and Mr. Johnson has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

78. Paragon Micro's conduct, as alleged herein, constitutes malicious, oppressive, willful and wanton tortious behavior in blatant and reckless disregard of CDW's rights, for which CDW should recover punitive damages in an amount sufficient to deter Paragon Micro and others similarly situated from engaging in future similar conduct.

79. Count I is independent of CDW's claim for misappropriation of trade secrets and is not based on Paragon Micro's or Tweedy's misuse of CDW's trade secrets.

## COUNT II
## COMMON LAW UNFAIR COMPETITION (PARAGON MICRO)

80. CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 of the Verified Complaint.

BCD0015041

81. Paragon Micro undertook the foregoing acts to gain an unfair competitive advantage over CDW.

82. Paragon Micro willfully undertook the foregoing acts with knowledge of and disregard for CDW's rights, and with the intention of causing harm to CDW and benefiting Paragon Micro.

83. Paragon Micro is unfairly competing in the marketplace and/or took actions while using CDW's employees to unfairly compete with CDW.

84. Paragon Micro's unfair competition has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

85. Count II is independent of CDW's claim for misappropriation of trade secrets and is not based on Paragon Micro's or Tweedy's misuse of CDW's trade secrets.

**COUNT III**
**BREACH OF CONTRACT –CONFIDENTIALITY (TWEEDY)**

86. CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 85 of the Verified Complaint.

87. Tweedy's Agreement with CDW is a valid and enforceable contract. The confidentiality provisions contained in the Agreement are reasonable and reasonably necessary to protect CDW's legitimate protectable interests in the development, use, and protection of its Confidential Information.

88. CDW has fully performed all of its obligations under the Agreement.

89. Tweedy obtained access to CDW's Confidential Information through his employment with CDW.

BCD0015042

90. Upon information and belief, Tweedy disclosed CDW's Confidential Information to a competitor without either the express or implied consent of CDW.

91. Tweedy used CDW's Confidential Information for purposes outside the scope of his employment without either the express or implied consent of CDW.

92. Tweedy acted willfully and maliciously in wrongfully disclosing and using CDW's Confidential Information.

93. Tweedy is under a continuing duty (a) to keep confidential CDW's Confidential Information that Tweedy learned through his employment with CDW, and (b) not to use, disclose, exploit, or divulge such Confidential Information other than for the benefit of CDW and with CDW's authorization.

94. Tweedy has breached and threatens to continue to breach his Agreement by (a) improperly disclosing and/or using CDW's confidential information; and (b) failing to return CDW's Confidential Information.

95. As a result, CDW has been injured, faces continued irreparable injury, and has no adequate remedy at law. CDW is threatened with losing money, customers, employees, goodwill, confidential information, and income in amounts that may be difficult to determine, unless Tweedy is enjoined and restrained by Order of this Court. Further, the benefits of granting injunctive relief outweigh any possible injury.

## COUNT IV
## BREACH OF CONTRACT –NON-SOLICITATION (TWEEDY)

96. CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 95 of the Verified Complaint.

97. Tweedy's Agreement with CDW is a valid and enforceable contract. The customer non-solicitation provision contained in the Agreement is reasonable and reasonably

43878-0006-LEGAL186405689.3                    15

necessary to protect CDW's legitimate protectable interests in its confidential information and relationships with its customers.

98. CDW has fully performed all of its obligations under the Agreement.

99. Upon information and belief, Tweedy has breached and threatens to continue to breach his Confidentiality and Non-Solicitation Agreement by directly or indirectly soliciting or otherwise contacting CDW's customers and/or prospective customers with which he had contact with while employed by CDW.

100. As a result, CDW has been injured, faces continued irreparable injury, and has no adequate remedy at law. CDW is threatened with losing money, customers, goodwill, confidential information and income in amounts that may be difficult to determine, unless Tweedy is enjoined and restrained by order of this Court. Further, the benefits of granting injunctive relief outweigh any possible injury.

## COUNT V
## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY (TWEEDY)

101. CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 100 of the Verified Complaint.

102. As an employee of CDW, Tweedy owed a fiduciary duty and a duty of loyalty to CDW.

103. CDW placed significant trust in Tweedy.

104. Tweedy breached his fiduciary duty and duty of loyalty by self-dealing and failing to act in CDW's best interest by (1) soliciting CDW clients on behalf of Paragon Micro while employed by CDW; (2) improperly using CDW's Confidential Information for his own use; and (3) upon information and belief, using CDW's Confidential Information to obtain employment with Paragon Micro.

BCD0015044

105.   Tweedy acted willfully and wantonly with actual malice and a planned intention to cause CDW severe harm.

106.   Tweedy has suffered damages proximately caused by Tweedy's breach of fiduciary duty and duty of loyalty to CDW.

107.   CDW has suffered damages as a result of Tweedy's breach of fiduciary duty and duty of loyalty to CDW.

### COUNT VI - VIOLATION OF THE ILLINOIS TRADE SECRETS ACT (ALL DEFENDANTS)

108.   CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 of the Verified Complaint.

109.   Tweedy obtained access to CDW's Confidential Information and trade secrets through his employment with CDW.

110.   Tweedy used CDW's Confidential Information and trade secrets for purposes outside the scope of his employment without either the express or implied consent of CDW.

111.   Paragon Micro improperly obtained access to CDW's Confidential Information and trade secrets through Tweedy, Mr. Dugger, and Mr. Johnson.

112.   Upon information and belief, Tweedy and Paragon Micro have misappropriated CDW's trade secrets including, but not limited to margin and pricing information, shipping information, product cost information, confidential customer lists, and other confidential customer information.  This information constitutes trade secrets within the meaning of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS §§ 1065/1, *et seq.*

113.   At all relevant times, CDW made reasonable efforts to maintain the confidentiality of its trade secret information, including those efforts described above, and otherwise guarded and protected that information from disclosure to third parties.

BCD0015045

114. CDW's Confidential Information and trade secrets derive their value, in part, from not being generally known to or readily ascertainable by CDW's competitors.

115. Tweedy and Paragon Micro acted willfully and maliciously in wrongfully misappropriating CDW's Confidential Information and trade secrets for their gain.

116. Tweedy and Paragon Micro have and will continue to violate the ITSA by (a) improperly disclosing and/or using CDW's Confidential Information and trade secrets; and (b) failing to return CDW's Confidential Information.

117. Tweedy's and Paragon Micro's conduct violates the ITSA, 765 ILCS 1065/2, and CDW is entitled to its attorneys' fees under ITSA.

118. As a result, CDW has been injured, faces continued irreparable injury, and has no adequate remedy at law. CDW is threatened with losing money, customers, employees, goodwill, confidential information, and income in amounts that may be difficult to determine, unless Tweedy is enjoined and restrained by Order of this Court. Further, the benefits of granting injunctive relief outweigh any possible injury.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (ALL DEFENDANTS)**

119. CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 118 of the Verified Complaint.

120. CDW has a reasonable expectation that its business relationships with the customers it assigned to Tweedy would continue.

121. CDW has a reasonable expectation that its business relationships with the customers it assigned to Mr. Dugger and Mr. Johnson would continue

122. Tweedy and Paragon Micro have knowledge of CDW's expectation of continued business with the customers it assigned to Tweedy, Mr. Dugger and Mr. Johnson would continue.

123. Tweedy and Paragon Micro purposefully interfered with CDW's business relationship and expectation of continued business with the customers CDW assigned to him.

124. Tweedy's and Paragon Micro's purposeful interference prevented CDW's expectation of continued business relationships with the customers it assigned to Tweedy, Mr. Dugger and Mr. Johnson.

125. Upon information and belief, Paragon Micro has engaged in similar conduct with respect to other CDW customers or prospective customers.

126. Tweedy and Paragon Micro have acted with malice and planned willfulness for the purpose of inducing the CDW customers to terminate their relations with CDW. Tweedy's conduct was accompanied by other wrongful conduct including breach of contract, wrongful disclosure and misuse of Confidential Information, and breach of the duty of loyalty. Paragon Micro's conduct was accompanied by other wrongful conduct including unfair competition. As such, Tweedy and Paragon Micro have engaged in outrageous behavior.

127. CDW has suffered damages from Tweedy's and Paragon's willful and purposeful interference with CDW' business relations with the customers CDW assigned to Tweedy, including, but not limited to, lost business, lost net profits, lost goodwill, attorneys' fees and cost of pursuing it remedies with respect to this wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, CDW respectfully requests that the Court enter an order as follows:

BCD0015047

A. That Paragon Micro, along with its respective agents, employers, employers, attorneys and those persons acting in concert with him be temporarily, preliminarily enjoined, and permanently enjoined from:

    (1) disclosing and/or using any of CDW's trade secrets or Confidential Information;

    (2) soliciting, servicing or otherwise contacting in any way any customer or prospective customer of CDW with which whom Tweedy, Mr. Dugger, or Mr. Johnson had contact with while employed at CDW on behalf of a competitor of CDW for 90 days from the date of this Court's Order;

    (3) soliciting or otherwise contacting in any way any customer or prospective customer of CDW with which Tweedy already has solicited or contacted in violation of his Confidentiality and Non-Solicitation Agreement; and

    (4) hiring any CDW coworkers for 90 days from the date of this Court's Order.

B. That Tweedy, along with his respective agents, employers, employers, attorneys and those persons acting in concert with him be temporarily, preliminarily enjoined, and permanently enjoined from:

    (1) disclosing and/or using any of CDW's trade secrets or Confidential Information;

    (2) soliciting or otherwise contacting in any way any customer or prospective customer of CDW with which he had contact while employed at CDW on behalf of a competitor of CDW for 90 days from the date of this Court's Order;

    (3) soliciting or otherwise contacting in any way any customer or prospective customer of CDW with which he has already solicited or contacted in violation of his Confidentiality and Non-Solicitation Agreement;

    (4) accepting any business or account transfers from any customers of CDW whom he, or anyone acting on his behalf, has already contacted for the purpose of doing business with his new employer;

    (5) accepting any business or account transfers from any customers of CDW whom he, or anyone acting on his behalf, has accessed their Confidential Information; and

    (6) otherwise violating his Confidentiality and Non-Solicitation Agreement.

C. That Tweedy and Paragon return to CDW all of its Confidential Information and trade secrets.

BCD0015048

D.    That CDW be awarded exemplary damages and its attorneys' fee pursuant to Illinois Trade Secret Act, 765 ILCS 1065/4(b) and 765 ILCS 1065/5;

E.    That CDW be awarded damages it has suffered in an amount to be proven at trial;

F.    That CDW be awarded punitive and/or exemplary damages in an amount to be proven at trial;

G.    That CDW be awarded the cost of this action, including reasonable attorneys' fees; and

H.    That CDW be awarded such other relief this Court deems just and proper.

DATED: June 30, 2010           **CDW LLC and CDW DIRECT LLC**

By: _____
         One of Their Attorneys

Craig T. Boggs (ARCD 6198435)
Laurence J. Oleksa (ARDC 6275635)
**PERKINS COIE LLP**
131 South Dearborn Street, Suite No. 1700
Chicago, Illinois 60603
(312) 324-8400
Attorneys for Plaintiffs CDW LLC and CDW Direct LLC

BCD0015049

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure of Illinois, the undersigned Brian Maastricht as Sales Manager for the Plaintiffs certifies that based upon the investigation undertaken in connection with this matter, the information and statements contained in the foregoing <u>Verified Complaint for Injunctive and Other Relief</u> are true and correct except as to matters stated to be on information and belief, and in such matters, the undersigned certifies that, based on foregoing, he verily believes the same to be true.

Brian Maastricht
Sales Manager

43878-0066/LEGAL18605689.3      22

BCD0015050



**EXHIBIT A**

BCD0015051

Todd Tweedy
6061

/

## CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

The success of the business of CDW Corporation and it subsidiaries and affiliates (referred to collectively as the "Company") depends in large part on the development, use and protection of its Confidential Information. While you are employed with CDW, you are permitted access to and use of CDW's Confidential Information. In consideration of your employment with the Company, the salary and commissions to be paid to you by the Company, and your access to and use of the Company's Confidential Information, you and the Company agree to enter into this Confidentiality and Non-Solicitation Agreement (the "Agreement").

"Confidential Information" means information relating to the present or planned business of the Company, our vendors and our customers that has not been released publicly by authorized representatives of the Company. This information may include, for example, trade secrets, know-how, inventions, patents and trademarks, copyrights, business development, marketing and sales programs, purchasing manners and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, financial data, regulatory approval strategies, results of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product development strategies and processes, safety information, programs and protocols, product design and related items used by the Company in its business. It is your duty and obligation to preserve and protect such Confidential Information both during and after your employment by the Company.

 1. Protection of The Company's Confidential Information. You agree that unless you first obtain the Company's written consent, you will not disclose or use at any time, either during or after your employment by the Company, any Confidential Information, except to the extent such disclosure or use is required in the performance of your duties for the Company. You further agree to take all appropriate steps to safeguard Confidential Information and to protect it against disclosure or misuse. You also agree that if you leave the Company's employ for any reason, you will immediately return to the Company all written or recorded material (in any format whatsoever, including computerized) obtained through your employment including, but not limited to, customer lists, correspondence, files, records, or any other document or record containing Confidential Information. You agree and acknowledge that the provisions of this paragraph apply to the Company's Confidential Information, as well as any of our vendors' or customers' Confidential Information of which you become aware as a result of your employment with the Company.

2.  **Protection of Your Prior Employer's Confidential Information.** Just as we require you to protect the Company's Confidential Information, we recognize that you may have entered into an agreement with a previous employer to protect that employer's confidential information. We expect you to abide fully with any valid aspects of such agreements. By entering into this Agreement, you agree and acknowledge that the Company has not asked you to disclose to it any confidential information you may have by reason of any affiliation with a prior employer, and that you will abide by any valid terms of any agreement you may have entered into protecting another entity's confidential information.

3.  **Non-Solicitation.** You acknowledge that the Company's relationships with its customers are important for the continued success of the Company. To protect these relationships, you agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not on behalf of any of the Company's competitors (including, without limitation, any organization or entity that you may start or become affiliated with) directly or indirectly solicit or otherwise contact in any way any customer or prospective customer of the Company with which you had contact while employed by the Company. For purposes of this Agreement, "prospective customer" includes any person, corporation, or other entity with respect to whom, at any time during the one-year period before the termination of your employment with the Company for any reason, you submitted or assisted in the submission of a presentation or proposal of any kind on behalf of the Company, acquired or had access to any Confidential Information or had contact as a result of your employment with the Company.

You also acknowledge that the Company has a highly qualified work force and strong interest in maintaining the stability of that work force and agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not contact any employees of the Company for the purpose of soliciting or inducing them to terminate their employment with the Company.

4.  **Obligation to Keep the Company Informed.** You agree that during the non-solicitation period referenced above in paragraph 3, you will disclose promptly and in writing to Coworker Services the identity of any organization or entity in a business competitive with the Company's business with which you become associated as an employee, agent, consultant, representative, partner, principal, officer, director or a similar capacity.

5.  **Injunctive Relief.** Since a breach of this Agreement may not adequately be compensated by money damages, you agree that the Company shall be entitled, in addition to any other remedy available to it, to a court order restraining or preventing an actual or threatened violation of this Agreement and you consent and agree to the issuance of such an order.

6.  **At-Will Employment.** You acknowledge and agree that nothing in this Agreement is intended to change your status as an at-will employee of the Company and nothing in this Agreement shall be construed as a guarantee of employment or continued employment.

7.  **Acknowledgment.** You acknowledge that you have read and understood this Agreement and agree to abide by its terms. You also understand that if you have any questions concerning your obligations under this Agreement, you should consult your Sales Manager or anyone in Coworker Services.

2

BCD0015053

8.    <u>Assignment</u>. You understand and agree that the Company may, at any time and without further action by you, assign this Agreement to any affiliate of the Company or to a purchaser of all or a substantial part of the Company's assets.

_____
Coworker's Signature

Todd Tweedy
_____
Coworker's Name (Please Print)

03-21-04
_____
Date

3

BCD0015054



# EXHIBIT B

-2-

BCD0015055



One CDW Way
200 N. Milwaukee Avenue
Vernon Hills, IL 60061

Phone: 847 465.6000
Fax: 847.465.6800
Toll-free: 800 800.4239

CDW.com

April 2, 2010

Todd Tweedy
6n447 Virginia
Roselle, IL 60172

Re:     Post-Employment Obligations

Dear Todd

In connection with your recent separation from CDW, we are writing to remind you of your post-employment obligations to CDW.

As you know, as a condition of your employment with CDW, you promised, in writing, as part of the Confidentiality and Non-Solicitation Agreement ("CDW Agreement")(copy attached), that you would not, on behalf of any of CDW's competitors, directly or indirectly solicit or otherwise contact in any way any customer or prospective customer of CDW with which you had contact while employed by CDW for **three (3) months** after the termination of your employment with CDW.

You also promised, in writing, that you would not use or disclose, either during or subsequent to you employment with CDW, any information relating to the present or planned business of CDW, our vendors and our customers that has not been released publicly by authorized representatives of CDW. Examples of this information include trade secrets, know-how, inventions, patents and trademarks, copyrights, business development, marketing and sales programs, purchasing manners and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, financial data, regulatory approval strategies, results of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product development strategies and processes, safety information, programs and protocols, product design and related items used by CDW in its business. You likewise are obliged to return to CDW any of this information, however stored. If you have not done so already, please do so promptly.

While we hope that this reminder of your obligations is sufficient, it is CDW's policy to take swift, appropriate steps to protect its interests, if necessary.

Please feel free to call me at (847) 371-7088 if you have any questions regarding your obligations to CDW.

Very truly yours,

Kelley Brooks
CWS Generalist

BCD0015056

Todd Tweedy
6061

6

## CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

The success of the business of CDW Corporation and it subsidiaries and affiliates (referred to collectively as the "Company") depends in large part on the development, use and protection of its Confidential Information. While you are employed with CDW, you are permitted access to and use of CDW's Confidential Information. In consideration of your employment with the Company, the salary and commissions to be paid to you by the Company, and your access to and use of the Company's Confidential Information, you and the Company agree to enter into this Confidentiality and Non-Solicitation Agreement (the "Agreement").

"Confidential Information" means information relating to the present or planned business of the Company, our vendors and our customers that has not been released publicly by authorized representatives of the Company. This information may include, for example, trade secrets, know-how, inventions, patents and trademarks, copyrights, business development, marketing and sales programs, purchasing manners and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, financial data, regulatory approval strategies, results of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product development strategies and processes, safety information, programs and protocols, product design and related items used by the Company in its business. It is your duty and obligation to preserve and protect such Confidential Information both during and after your employment by the Company.

1.     Protection of The Company's Confidential Information.  You agree that unless you first obtain the Company's written consent, you will not disclose or use at any time, either during or after your employment by the Company, any Confidential Information, except to the extent such disclosure or use is required in the performance of your duties for the Company. You further agree to take all appropriate steps to safeguard Confidential Information and to protect it against disclosure or misuse. You also agree that if you leave the Company's employ for any reason, you will immediately return to the Company all written or recorded material (in any format whatsoever, including computerized) obtained through your employment including, but not limited to, customer lists, correspondence, files, records, or any other document or record containing Confidential Information. You agree and acknowledge that the provisions of this paragraph apply to the Company's Confidential Information, as well as any of our vendors' or customers' Confidential Information of which you become aware as a result of your employment with the Company.

BCD0015057

2. Protection of Your Prior Employer's Confidential Information. Just as we require you to protect the Company's Confidential Information, we recognize that you may have entered into an agreement with a previous employer to protect that employer's confidential information. We expect you to abide fully with any valid aspects of such agreements. By entering into this Agreement, you agree and acknowledge that the Company has not asked you to disclose to it any confidential information you may have by reason of any affiliation with a prior employer, and that you will abide by any valid terms of any agreement you may have entered into protecting another entity's confidential information.

3. Non-Solicitation. You acknowledge that the Company's relationships with its customers are important for the continued success of the Company. To protect these relationships, you agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not on behalf of any of the Company's competitors (including, without limitation, any organization or entity that you may start or become affiliated with) directly or indirectly solicit or otherwise contact in any way any customer or prospective customer of the Company with which you had contact while employed by the Company. For purposes of this Agreement, "prospective customer" includes any person, corporation, or other entity with respect to whom, at any time during the one-year period before the termination of your employment with the Company for any reason, you submitted or assisted in the submission of a presentation or proposal of any kind on behalf of the Company, acquired or had access to any Confidential Information or had contact as a result of your employment with the Company.

You also acknowledge that the Company has a highly qualified work force and strong interest in maintaining the stability of that work force and agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not contact any employees of the Company for the purpose of soliciting or inducing them to terminate their employment with the Company.

4. Obligation to Keep the Company Informed. You agree that during the non-solicitation period referenced above in paragraph 3, you will disclose promptly and in writing to Coworker Services the identity of any organization or entity in a business competitive with the Company's business with which you become associated as an employee, agent, consultant, representative, partner, principal, officer, director or a similar capacity.

5. Injunctive Relief. Since a breach of this Agreement may not adequately be compensated by money damages, you agree that the Company shall be entitled, in addition to any other remedy available to it, to a court order restraining or preventing an actual or threatened violation of this Agreement and you consent and agree to the issuance of such an order.

6. At-Will Employment. You acknowledge and agree that nothing in this Agreement is intended to change your status as an at-will employee of the Company and nothing in this Agreement shall be construed as a guarantee of employment or continued employment.

7. Acknowledgment. You acknowledge that you have read and understood this Agreement and agree to abide by its terms. You also understand that if you have any questions concerning your obligations under this Agreement, you should consult your Sales Manager or anyone in Coworker Services.

2

BCD0015058

8.    Assignment.  You understand and agree that the Company may, at any time and without further action by you, assign this Agreement to any affiliate of the Company or to a purchaser of all or a substantial part of the Company's assets.

_____
Coworker's Signature

Todd Tweedy
_____
Coworker's Name (Please Print)

03-21-04
_____
Date

3

BCD0015059



# EXHIBIT C

-3-

BCD0015060

Shane Dugger
8287

## CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

The success of the business of CDW Corporation and it subsidiaries and affiliates (referred to collectively as the "Company") depends in large part on the development, use and protection of its Confidential Information. While you are employed with CDW, you are permitted access to and use of CDW's Confidential Information. In consideration of your employment with the Company, the salary and commissions to be paid to you by the Company, and your access to and use of the Company's Confidential Information, you and the Company agree to enter into this Confidentiality and Non-Solicitation Agreement (the "Agreement").

"Confidential Information" means information relating to the present or planned business of the Company, our vendors and our customers that has not been released publicly by authorized representatives of the Company. This information may include, for example, trade secrets, know-how, inventions, patents and trademarks, copyrights, business development, marketing and sales programs, purchasing reports and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, financial data, regulatory approval strategies, result of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product development strategies and processes, safety information, programs and protocols, product design and related items used by the Company in its business. It is your duty and obligation to preserve and protect such Confidential Information both during and after your employment by the Company.

1. **Protection of The Company's Confidential Information.** You agree that unless you first obtain the Company's written consent, you will not disclose or use at any time, either during or after your employment by the Company, any Confidential Information, except to the extent such disclosure or use is required in the performance of your duties for the Company. You further agree to take all appropriate steps to safeguard Confidential Information and to protect it against disclosure or misuse. You also agree that if you leave the Company's employ for any reason, you will immediately return to the Company all written or recorded material (in any format whatsoever, including computerized) obtained through your employment including, but not limited to, customer lists, correspondence, files, records, or any other document or record containing Confidential Information. You agree and acknowledge that the provisions of this paragraph apply to the Company's Confidential Information, as well as any of our vendors' or customers' Confidential Information of which you become aware as a result of your employment with the Company.

BCD0015061

2.    **Protection of Your Prior Employer's Confidential Information.**  Just as we require you to protect the Company's Confidential Information, we recognize that you may have entered into an agreement with a previous employer to protect that employer's confidential information. We expect you to abide fully with any valid aspects of such agreements. By entering into this Agreement, you agree and acknowledge that the Company has not asked you to disclose to it any confidential information you may have by reason of any affiliation with a prior employer, and that you will abide by any valid terms of any agreement you may have entered into protecting another entity's confidential information.

3.    **Non-Solicitation.**  You acknowledge that the Company's relationships with its customers are important for the continued success of the Company. To protect these relationships, you agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not on behalf of any of the Company's competitors (including, without limitation, any organization or entity that you may start or become affiliated with) directly or indirectly solicit or otherwise contact in any way any customer or prospective customer of the Company with which you had contact while employed by the Company. For purposes of this Agreement, "prospective customer" includes any person, corporation, or other entity with respect to whom, at any time during the one-year period before the termination of your employment with the Company for any reason, you submitted or assisted in the submission of a presentation or proposal of any kind on behalf of the Company, acquired or had access to any Confidential Information or had contact as a result of your employment with the Company.

You also acknowledge that the Company has a highly qualified work force and strong interest in maintaining the stability of that work force and agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not contact any employees of the Company for the purpose of soliciting or inducing them to terminate their employment with the Company.

4.    **Obligation to Keep the Company Informed.**  You agree that during the non-solicitation period referenced above in paragraph 3, you will disclose promptly and in writing to Coworker Services the identity of any organization or entity in a business competitive with the Company's business with which you become associated as an employee, agent, consultant, representative, partner, principal, officer, director or a similar capacity.

5.    **Injunctive Relief.**  Since a breach of this Agreement may not adequately be compensated by money damages, you agree that the Company shall be entitled, in addition to any other remedy available to it, to a court order restraining or preventing an actual or threatened violation of this Agreement and you consent and agree to the issuance of such an order.

6.    **At-Will Employment.**  You acknowledge and agree that nothing in this Agreement is intended to change your status as an at-will employee of the Company and nothing in this Agreement shall be construed as a guarantee of employment or continued employment.

7.    **Acknowledgment.**  You acknowledge that you have read and understood this Agreement and agree to abide by its terms. You also understand that if you have any questions concerning your obligations under this Agreement, you should consult your Sales Manager or anyone in Coworker Services.

2

BCD0015062



8.     Assignment.  You understand and agree that the Company may, at any time and without further action by you, assign this Agreement to any affiliate of the Company or to a purchaser of all or a substantial part of the Company's assets.

Coworker's Signature

Shane. Dugger
Coworker's Name (Please Print)

Jan 16 2004
Date

3

BCD0015063



# EXHIBIT D

-4-

BCD0015064

Aaron Johnson
6978

## CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

The success of the business of CDW Corporation and it subsidiaries and affiliates (referred to collectively as the "Company") depends in large part on the development, use and protection of its Confidential Information. While you are employed with CDW, you are permitted access to and use of CDW's Confidential Information. In consideration of your employment with the Company, the salary and commissions to be paid to you by the Company, and your access to and use of the Company's Confidential Information, you and the Company agree to enter into this Confidentiality and Non-Solicitation Agreement (the "Agreement").

"Confidential Information" means information relating to the present or planned business of the Company, our vendors and our customers that has not been released publicly by authorized representatives of the Company. This information may include, for example, trade secrets, know-how, inventions, patents and trademarks, copyrights, business development, marketing and sales programs, purchasing manners and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, financial data, regulatory approval strategies, results of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product development strategies and processes, safety information, programs and protocols, product design and related items used by the Company in its business. It is your duty and obligation to preserve and protect such Confidential Information both during and after your employment by the Company.

1. Protection of The Company's Confidential Information. You agree that unless you first obtain the Company's written consent, you will not disclose or use at any time, either during or after your employment by the Company, any Confidential Information, except to the extent such disclosure or use is required in the performance of your duties for the Company. You further agree to take all appropriate steps to safeguard Confidential Information and to protect it against disclosure or misuse. You also agree that if you leave the Company's employ for any reason, you will immediately return to the Company all written or recorded material (in any format whatsoever, including computerized) obtained through your employment including, but not limited to, customer lists, correspondence, files, records, or any other document or record containing Confidential Information. You agree and acknowledge that the provisions of this paragraph apply to the Company's Confidential Information, as well as any of our vendors' or customers' Confidential Information of which you become aware as a result of your employment with the Company.

BCD0015065

2. **Protection of Your Prior Employer's Confidential Information.** Just as we require you to protect the Company's Confidential Information, we recognize that you may have entered into an agreement with a previous employer to protect that employer's confidential information. We expect you to abide fully with any valid aspects of such agreements. By entering into this Agreement, you agree and acknowledge that the Company has not asked you to disclose to it any confidential information you may have by reason of any affiliation with a prior employer, and that you will abide by any valid terms of any agreement you may have entered into protecting another entity's confidential information.

3. **Non-Solicitation.** You acknowledge that the Company's relationships with its customers are important for the continued success of the Company. To protect these relationships, you agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not on behalf of any of the Company's competitors (including, without limitation, any organization or entity that you may start or become affiliated with) directly or indirectly solicit or otherwise contact in any way any customer or prospective customer of the Company with which you had contact while employed by the Company. For purposes of this Agreement, "prospective customer" includes any person, corporation, or other entity with respect to whom, at any time during the one-year period before the termination of your employment with the Company for any reason, you submitted or assisted in the submission of a presentation or proposal of any kind on behalf of the Company, acquired or had access to any Confidential Information or had contact as a result of your employment with the Company.

You also acknowledge that the Company has a highly qualified work force and strong interest in maintaining the stability of that work force and agree that for a period of three (3) months after your employment with the Company terminates for any reason, you will not contact any employees of the Company for the purpose of soliciting or inducing them to terminate their employment with the Company.

4. **Obligation to Keep the Company Informed.** You agree that during the non-solicitation period referenced above in paragraph 3, you will disclose promptly and in writing to Coworker Services the identity of any organization or entity in a business competitive with the Company's business with which you become associated as an employee, agent, consultant, representative, partner, principal, officer, director or a similar capacity.

5. **Injunctive Relief.** Since a breach of this Agreement may not adequately be compensated by money damages, you agree that the Company shall be entitled, in addition to any other remedy available to it, to a court order restraining or preventing an actual or threatened violation of this Agreement and you consent and agree to the issuance of such an order.

6. **At-Will Employment.** You acknowledge and agree that nothing in this Agreement is intended to change your status as an at-will employee of the Company and nothing in this Agreement shall be construed as a guarantee of employment or continued employment.

7. **Acknowledgment.** You acknowledge that you have read and understood this Agreement and agree to abide by its terms. You also understand that if you have any questions concerning your obligations under this Agreement, you should consult your Sales Manager or anyone in Coworker Services.

2

8.    Assignment. You understand and agree that the Company may, at any time and without further action by you, assign this Agreement to any affiliate of the Company or to a purchaser of all or a substantial part of the Company's assets.

_____
Coworker's Signature

Arlen  Johnson
Coworker's Name (Please Print)

2-20-04
Date

3

BCD0015067