# **<u>Exhibit 45</u>**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PARAGON MICRO, INC. an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) ) | |
| NICHOLAS J. BUNDY, an individual, and NJB SALES, INC., an Illinois corporation, | ) ) ) | |
| Defendants | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

NOW COMES Plaintiff, PARAGON MICRO, INC. ("Paragon Micro" or "Plaintiff"), by and through its attorneys, MITCHELL S. CHABAN and KRISTEN E. O'NEILL, of LEVIN GINSBURG, as and for its Verified Complaint for Injunctive Relief, and Damages ("Complaint") against Defendants NICHOLAS J. BUNDY ("Bundy") and NJB SALES, INC., an Illinois corporation ("NJB Sales") (Bundy and NJB Sales are sometimes referred to herein collectively as "Defendants"), and states:

## NATURE OF THE CASE

1. Defendant Bundy is a former Paragon Micro Account Representative who, during the course of his work for Paragon Micro, abused the significant trust placed in him by Paragon Micro by (a) deleting and destroying detailed customer contact information, emails, reports and other data after gaining unauthorized remote access to Paragon Micro's password-protected computer network; (b) falsifying Paragon Micro's account profile with Symantec, a Paragon Micro vendor, for the purpose of diverting critical information and sales leads from Paragon Micro to Bundy and Defendant NJB Sales; (c) diverting sales from Paragon Micro to Bundy and Defendant NJB Sales; (d) falsifying sales transactions in order to inflate his commission; (e)

Page 1 of 31

BCD0014979

sabotaging Paragon Micro's customer relationships by intentionally failing to arrange for the delivery of goods and services ordered and paid for by Paragon Micro customers; and (f) misappropriating Paragon Micro's confidential information and trade secrets, including confidential information about Paragon Micro's key customers and vendors, so that he could use that information to obtain an unfair advantage in trying to lure away Paragon Micro's customers. Bundy and NJB are now using Paragon Micro's confidential information and trade secrets to compete unfairly with Paragon Micro. Paragon Micro brings this action seeking injunctive relief to stop Bundy from unlawfully accessing Paragon Micro's computer network and destroying Paragon Micro's data property, to stop the misuse of Paragon Micro's confidential information and trade secrets, and for money damages and other relief.

## THE PARTIES

2. Paragon Micro is an Illinois corporation with a principal place of business in Lake Zurich, Lake County, IL.

3. Nicholas J. Bundy is an individual, who resides at 146 Beech Drive, Lake Zurich, Illinois.

4. NJB Sales is an Illinois corporation with a principal place of business located, on information and belief, at 146 Beech Drive, Lake Zurich, Illinois. On information and belief, Bundy is the President and sole shareholder and director of NJB Sales.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Bundy and NJB Sales because each is a citizen of the state of Illinois. In addition, the wrongful acts of Defendants which give rise to this case are substantially connected to the state of Illinois.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff alleges a cause of action for violation of the Computer Fraud and Abuse Act ("CFAA"),

BCD0014980

18 U.S.C. § 1030, et. seq. This court has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the claims brought under the CFAA that they form a part of the same case or controversy.

7.      Venue properly lies with this Court pursuant to 28 U.S.C. § 1391(b)(1) because all defendants reside in Illinois and at least one defendant resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because events giving rise to the claims herein occurred in this district, and substantial harm was suffered in this district by Paragon Micro.

## FACTUAL BACKGROUND

**A.      PARAGON MICRO DEVELOPS CONFIDENTIAL INFORMATION AND TRADE SECRETS**

8.      Paragon Micro provides and sells technology products and services to businesses, and educational and government institutions. Paragon Micro is headquartered in Lake Zurich, Illinois.

9.      Paragon Micro sells technology products and services through Account Representatives who strive to tailor specific technology solutions to satisfy Paragon Micro's customers' particular needs. Account Representatives have access to Paragon Micro's product cost information, which they use to develop pricing and margin strategies, negotiate sales, set prices, and make other important decisions regarding Paragon Micro's relationships with its customers. Paragon Micro spends enormous resources each year to develop and maintain its customer relationships. Paragon Micro's customer relationships can take years to develop and require an in depth understanding of the customer's business operations and technology needs gained through extensive interaction with Paragon Micro's customers.

10.      Paragon Micro works with its customers to develop the optimal mix of hardware, software and technical support to fit each customer's unique needs. Paragon Micro has also

BCD0014981

succeeded in the marketplace by developing relationships with manufacturers, distributors and other vendors.

11.     Critical to Paragon Micro's success had been its development of confidential information and trade secrets, including but not limited to sales data, pricing and cost information, local market conditions, industry preferences and marketing and sales strategies.

12.     The confidential and proprietary information of Paragon Micro ("Confidential Information") includes but is not limited to: trade secrets, know-how, inventions, patents and trademarks, copyrights, business development plans, marketing and sales programs, purchasing manners and methods, the identity and addresses of actual or potential customers, customer and supplier/vendor information, personnel information, compensation information, pricing information, profit margins, financial data, regulatory approval strategies, results of investigations, research, testing methodologies and results, certain computer programs, manufacturing methods and processes, technologies and protocols, product design and related items used by Paragon Micro in its business.

13.     Paragon Micro has taken extensive measures to ensure that its Confidential Information and trade secrets remain secret.   Paragon Micro protects the secrecy of its Confidential Information and trade secrets through the various security measures, including: (a) requiring employees and contractors to sign agreements containing confidentiality provisions; (b) discussing Paragon Micro's confidentiality policies with its employees and contractors at the time of hire; (c) requiring employees and contractors to sign post-employment restrictive covenants; (d) limiting access to the Confidential Information and monitoring who is given access to such information; (e) password protecting all computers; (f) instructing personnel not to disclose the Confidential Information to persons outside Paragon Micro both during and after

Page 4 of 31

BCD0014982

their employment; (g) prohibiting the disclosure of Confidential Information in Paragon Micro's employment policies; (h) requiring all Confidential Information to be returned whenever an employee terminates his or her employment; (i) restricting access to Paragon Micro's customer files; (j) programming computer systems to lock automatically if they remain idle for more than a few minutes; (k) utilizing video surveillance in and around the office; and (l) requiring a company-issued key card to access the office.

## B.   BUNDY'S EMPLOYMENT WITH PARAGON MICRO

14.    In or about June 2008, Bundy became an Account Representative for Paragon Micro. To enable him to perform his job duties, Bundy was entrusted with a portion of Paragon Micro's Confidential Information, including but not limited to its pricing, terms, and cost information for certain customers to whom he was assigned, and various other forms of customer and vendor data. In connection with his position, Bundy executed an Independent Contractor Agreement on or about June 18, 2008 (the "Agreement"). (A true and correct copy of the Agreement is attached hereto as Exhibit "A").

15.    Pursuant to Section 4 of the Agreement, Bundy agreed that he "will at no time during the period that this Agreement remains in effect or after the termination of this Agreement, whether that termination is voluntary, involuntary, for cause, not for cause, or other otherwise, disclose any confidential information of Company [Paragon Micro] gained by him/her." Ex. A, § 4.

16.    Pursuant to Section 4 of the Agreement, Bundy further agreed that immediately upon termination of the Agreement, he "shall return all of Company's [Paragon Micro's] property to it, including any and all copies of said property." Ex A, § 4.

17.    On December 22, 2008, Bundy incorporated NJB Sales. Shortly thereafter, Bundy began performing his duties as a Paragon Micro Account Representative through NJB

BCD0014983

Sales. Bundy requested, and Paragon Micro agreed, to pay NJB Sales the commissions earned via Bundy's sale of products and services on behalf of Paragon Micro.

18. Paragon Micro demanded, and Bundy agreed, to keep confidential Paragon Micro's Confidential Information. Given that Bundy was and is NJB Sales' sole shareholder and operator, NJB Sales was also aware that Paragon Micro considered the Confidential Information to be confidential.

## C. BUNDY DIVERTS SALES FROM PARAGON MICRO TO NJB SALES

19. In late-December 2013, Paragon Micro discovered that Bundy had issued to Management & Training Corporation ("MTC"), an existing Paragon Micro customer, a price quotation on a Paragon Micro quotation form for the potential sale of certain computer hardware. (A true and correct copy of the price quotation is attached hereto as Exhibit "B"). MTC subsequently placed an order with Paragon Micro based on the quotation.

20. MTC contacted Paragon Micro believing an error had been made because MTC's credit card statement showed the seller of the hardware to be NJB Sales even though MTC purchased the items based on a quotation from Paragon Micro and believed it was purchasing the hardware from Paragon Micro. Unbeknownst to MTC or Paragon Micro, on December 12, 2013, Bundy diverted this sale from Paragon Micro to NJB Sales by using MTC's credit card to pay NJB Sales for the hardware MTC had ordered from Paragon Micro. (A true and correct copy of the transaction summary for the credit card charge to NJB Sales is attached hereto as Exhibit "C"). Paragon Micro has received other calls from Paragon Micro customers concerned about why another company, NJB Sales, is listed on their credit card statements and has access to their credit card numbers.

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0014984

## D.     BUNDY FALSIFIES PARAGON MICRO'S SYMANTEC ACCOUNT

21.     Using Paragon Micro's password which Bundy was entrusted to use only for the benefit of Paragon Micro, Bundy gained access to the profile page of Paragon Micro's account with Symantec, an anti-virus software vendor, and changed the administrator from "Larry Hall, Paragon Micro Vice President, Purchasing & Partner Development" to "Nick Bundy, Paragon Micro Director of Sales." Bundy never held the title "Director of Global Sales" and was never authorized to make changes to Paragon Micro's Symantec account profile.

22.     Bundy also changed the contact number for two other Paragon Micro representatives listed on the Symantec profile page to Bundy's personal telephone number. This allowed Bundy, rather than Paragon Micro, to receive notifications from Symantec concerning anti-virus software renewal dates for all of Paragon Micro's customers. Upon information and belief, Bundy also intercepted customer leads from Symantec intended for Paragon Micro.

## E.     BUNDY FALSIFIES SALES TRANSACTIONS

23.     Paragon Micro has thus far discovered approximately 30 instances where Bundy falsified sales transactions in order to inflate his commission. In one instance, Bundy invoiced a Paragon Micro customer $1,960 for a warranty that would have cost Paragon Micro $1,600. After the transaction was completed, Bundy accessed Paragon Micro's computer network and altered the transaction by changing the cost of the warranty from $1,600 to zero, thereby making the profit appear to be $1,960 when, in fact, it was only $360. Bundy was paid a commission for this sale based on gross profit of $1,960. To make matters worse, the customer did not receive the warranty because *Bundy intentionally failed to submit the customer's order even though the customer had paid in full.*

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0014985

## F. BUNDY MALICIOUSLY DESTROYS PARAGON MICRO'S DATA

24.     To conceal the depth of his deception and disloyalty, in or around December 2013, Bundy remotely accessed Paragon Micro's computer network and deleted customer contact and sales information for approximately forty (40) customers of Paragon Micro ("Targeted Customers")[1], as well as voluminous emails, records, reports and other data. Bundy deleted the information and data in order to gain an unfair advantage over Paragon Micro for the business of the Targeted Customers. In fact, Bundy and NJB are actively soliciting the Targeted Customers and attempting to lure them away from Paragon Micro.

25.     Paragon Micro will never know how much and what information Bundy deleted because he also deleted all of the data from the "deleted" folder on Paragon Micro's network. Bundy's intentional destruction of Paragon Micro's property was intended to conceal his wrongful and malicious conduct and has made it effectively impossible to determine precisely what information Bundy misappropriated from Paragon Micro.

## G. BUNDY'S POST-TERMINATION USE OF PARAGON MICRO'S CONFIDENTIAL INFORMATION

26.     On January 3, 2014, Paragon Micro terminated its relationship with Bundy and demanded, among other things, that Bundy immediately return to Paragon Micro all Confidential Information in Bundy's custody or control. A true and correct copy of Paragon Micro's counsel's January 3, 2014 letter to Bundy is attached hereto as Exhibit D.

27.     Despite demand from Paragon Micro, Bundy has failed and refuses to return Paragon Micro's Confidential Information.

28.     On information and belief, Bundy remains in possession of Paragon Micro's Confidential Information and trade secrets, including but not limited to the following: (a)

---

[1] Paragon Micro will provide to the Court and to Defendant a list of the Targeted Customers.

BCD0014986

Paragon Micro's customer lists, including key personnel to target for specific opportunities, specific data regarding the pricing and features of each account, stores, sales histories, profitability, and the customers special needs, issues and plans; (b) Paragon Micro's relationship with manufacturers, distributors, and vendors, including non-public and critical information about the amount of compensation paid to such third-parties; such information provides advantages to compete with Paragon Micro with its most important business sources; (c) Paragon Micro's pricing plans and strategies for obtaining new business and retaining existing business; (d) Paragon Micro's management methods, including those related to structuring and running its business; (e) Paragon Micro's key sales employees, including information about salary, bonuses, and benefits, all of which would allow a competitor to identify and hire away critical Paragon Micro employees who could work together, complement one another, target and undercut Paragon Micro with customers, manufacturers, vendors and distributors, and effectively use Paragon Micro's Confidential Information and trade secrets.

29. Bundy and NJB Sales continue to exploit the Paragon Micro Confidential Information in their possession, including by using the information and data concerning the Targeted Customers to solicit the Targeted Customers to cease doing business with Paragon Micro and instead to do business with NJB Sales.

## H. INJUNCTIVE RELIEF IS NEEDED TO PROTECT PARAGON MICRO'S CONFIDENTIAL INFORMATION AND TRADE SECRETS

30. Bundy's malicious destruction of Paragon Micro's data, documents and information is irreparably harming the business of Paragon Micro. The harm is irreparable because Paragon Micro will never know how much and what information Bundy deleted and will never be able to recover that information.

BCD0014987

31.     Bundy is also causing irreparable harm to Paragon Micro's customer relationships and, upon information and belief, he is unlawfully using Paragon Micro's Confidential Information and trade secrets that Paragon Micro spent considerable time and resources to build and maintain. Bundy is specifically focused on luring away the Targeted Customers while Paragon Micro is at a disadvantage due to Bundy's destruction of information and data concerning the Targeted Customers. The harm is irreparable and ongoing because customer relationships are inherently delicate and cannot be replaced or repaired with money damages.

32.     In circumstances such as these, where Bundy is engaged in blatantly malicious conduct that has greatly damaged and continues to damage Paragon Micro irreparably, injunctive relief is available to Paragon Micro as a matter of right.

**COUNT I:**
**BREACH OF FIDUCIARY DUTY (BUNDY)**

33.     Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

34.     As an Account Representative and agent of Paragon Micro, Bundy owed to Paragon Micro fiduciary duties, including the duty of honesty, the duty of full disclosure, and the duty of undivided loyalty.

        (a)     Bundy breached his fiduciary duties to Paragon Micro in at least the following ways, causing Plaintiff substantial injury:

        (b)     permanently deleting and destroying Paragon Micro's customer contact and sales information for the Targeted Customers, emails, records, reports and other data after gaining unauthorized remote access to Paragon Micro's password-protected computer network, in anticipation of competing with Paragon Micro and to conceal his misconduct;

BCD0014988

(c)     falsifying Paragon Micro's account profile with Symantec, a Paragon Micro vendor, by gaining unauthorized access to the password-protected account for the purpose of diverting critical information and sales leads away from Paragon Micro and to NJB Sales;

(d)     diverting sales from Paragon Micro to Defendant NJB Sales;

(e)     falsifying sales transaction reports in order to inflate his commission;

(f)     sabotaging Paragon Micro's customer relationships by intentionally failing to arrange for the delivery of goods and services ordered and paid for by Paragon Micro's customers; and

(g)     misappropriating Paragon Micro's confidential information and trade secrets, including confidential information about the Targeted Customers and other Paragon Micro customers and vendors, so that he could use that information to obtain an unfair advantage in trying to lure away Paragon Micro's customers.

WHEREFORE, for all of the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that this Court grant the following relief:

A.     A Temporary Restraining Order, Preliminary Injunction and upon final disposition, entry of a Permanent Injunction, prohibiting Bundy, directly or indirectly, from soliciting or accepting business from the Targeted Customers for the sale of IT products and services;

B.     An accounting to specifically identify all revenue realized by Bundy, either directly or indirectly, from sales diverted from Paragon Micro;

C.     A constructive trust on all assets presently being held by Bundy, either directly or through NJB Sales, so that it may be determined whether the assets of Plaintiff are being held in

BCD0014989

furtherance of or as a consequence of the usurpation of Paragon Micro's business and sales opportunities;

D.     An order requiring the return of all assets presently held or previously utilized by Bundy, either directly or through NJB Sales, in furtherance or development of, or realized from or in connection with or as a result of the usurpation of Paragon Micro's business and sales opportunities;

E.     An order restraining Bundy, directly or through NJB Sales, and any individual or entity acting in concert with him, from using or benefiting from Paragon Micro's assets, including (without limitation) its Confidential Information and trade secrets;

F.     An order requiring Bundy to disgorge and forfeit all compensation or other interests and benefits received from Paragon Micro from the time he breached his fiduciary duties owed them;

G.     A judgment in favor of Paragon Micro and against Bundy for compensatory damages in an amount presently unknown to Plaintiff but in good faith and reasonably believed to be in excess of $100,000;

H.     A judgment in favor of Paragon Micro and against Bundy for punitive damages in an amount sufficient to generally and specifically deter his misconduct in the future;

I.     An order awarding Paragon Micro its costs incurred in this action, including its attorney's fees; and

J.     An order awarding Paragon Micro such other and further relief as is just and equitable.

**COUNT II:**
**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (BUNDY)**

35.     Plaintiff re-alleges paragraphs 1 through 35 above as though fully set forth herein.

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0014990

36.     At all times relevant to this Complaint, there was in existence a certain statute titled The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.  The CFAA provides, in relevant part, as follows:

> Whoever … knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer

18 U.S.C. § 1030(a)(5)(A)(i);

> by conduct described in clause (i), (ii), or (iii) of subpart (A), caused …

18 U.S.C. § 1030(a)(5)(B);

> loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

18 U.S.C. § 1030(a)(5)(B)(i);

> the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automatic typewriter, typesetter, a portable hand calculator, or other similar device;

18 U.S.C. § 1030(e)(1);

> the term "protected computer" means … a computer which is used in interstate or foreign commerce or communication …

18 U.S.C. § 1030(e)(2)(B); and

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (c)(4)(A)(i).  Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(1) are limited to economic damages.

18 U.S.C. § 1030(g).

BCD0014991

37.     Bundy's willful destruction of pertinent data on Paragon Micro's computer network is a violation of the civil provisions of the CFAA, pursuant to which Paragon Micro is entitled to damages, injunctive and other equitable relief.

38.     Bundy, as alleged herein, knowingly caused the transmission of a program, information, code or command, and, as a result of such conduct, intentionally caused damage, without authorization, to a protected computer within the meaning of the CFAA.

39.     Bundy's unlawful conduct has caused damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000.

40.     By his continuing conduct, Bundy has demonstrated his willingness to continue to engage in acts that violate the CFAA.  The injury to Plaintiff is immediate, irreparable and ongoing.

41.     Plaintiff has demonstrated that Bundy, unless restrained, will continue to engage in the unlawful and malicious conduct that is alleged herein.  There is a likelihood that Plaintiff will prevail on the merits of this action.

42.     Should this Court grant injunctive relief to Plaintiff, the burden on Bundy would be slight compared to the injury to Plaintiff if such relief were not granted.  No injury to Bundy would result from an order requiring him to comport his actions with the law.

43.     The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would accomplish the objectives of the CFAA.

WHEREFORE, for all of the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that this Court grant the following relief:

BCD0014992

A. A Temporary Restraining Order, Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Bundy, enjoining him from engaging in acts and practices in violation of the CFAA;

B. A Temporary Restraining Order, Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Bundy, enjoining him from destroying, transferring, using, or disposing of any records, data, emails, reports or any other property owned by Paragon Micro or in which Paragon Micro has an interest;

C. A Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Bundy, directing that he turnover all of Paragon Micro's property, whether real, personal or mixed, including but not limited to confidential business information and any copies of the same to Plaintiff, including the return of all computer data files that Bundy destroyed or removed from Paragon Micro's computer network;

D. A judgment in favor of Paragon Micro and against Bundy for compensatory damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

E. A judgment in favor of Paragon Micro and against Bundy for punitive damages in an amount sufficient to generally and specifically deter his misconduct in the future;

F. An order awarding Plaintiff its costs and attorney's fees; and

G. Such other and additional relief as this Court may deem appropriate.

## COUNT III:
## COMPUTER TAMPERING (BUNDY)

44. Plaintiff re-alleges paragraphs 1 through 32as if fully set forth herein.

BCD0014993

45. At all times relevant to this Complaint, there was in existence a certain statute prohibiting the act of Computer Tampering, 720 ILCS 5/16D-3, et. seq., which provides, in relevant part, as follows:

> (a) A person commits the offense of computer tampering when he knowingly and without authorization of a computer's owner ... or in excess of the authority granted him:
>
> (b) Accesses or causes to be accessed a computer or any part thereof, a computer network, or a program or data, and damages or destroys the computer or alters, deletes, or removes a computer program or data.
>
> (c) Whoever suffers loss by reason of a violation of subsection (a)(4) of this Section may, in a civil action against the violator, obtain appropriate relief. In a civil action under this Section, the court may award to the prevailing party reasonable attorney's fees and other litigation expenses.

720 ILCS 5/16D-3.

46. Bundy's willful destruction of pertinent data on Paragon Micro's computer network is a violation of both the criminal and civil provisions of the computer tampering act, pursuant to which Plaintiff is entitled to appropriate relief, attorney's fees and other litigation expenses.

47. Bundy, as alleged herein, knowingly and without authorization executed a command that resulted in the permanent deletion, destruction and removal of pertinent data from Paragon Micro's computer network. As a result of such intentional conduct, Bundy caused Plaintiff significant loss.

WHEREFORE, for all of the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that this Court grant the following relief:

A. A Temporary Restraining Order, Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, pursuant to 720 ILCS 5/16D-3(c), against Bundy, enjoining him from engaging in acts and practices in violation of the CFAA;

Page 16 of 31

BCD0014994

B.      A Temporary Restraining Order, Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, pursuant to 720 ILCS 5/16D-3(c), against Bundy, enjoining him from destroying, transferring, using, or disposing of any records, data, emails, reports or any other property owned by Paragon Micro or in which Paragon Micro has an interest;

C.      A Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, pursuant to 720 ILCS 5/16D-3(c), against Bundy, directing that he turnover all of Paragon Micro's property, whether real, personal or mixed, including but not limited to confidential business information and any copies of the same to Plaintiff, including the return of all computer data files that Bundy destroyed or removed from Paragon Micro's computer network;

D.      A judgment in favor of Paragon Micro and against Bundy for compensatory damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

E.      A judgment in favor of Paragon Micro and against Bundy for punitive damages in an amount sufficient to generally and specifically deter his misconduct in the future;

F.      An order awarding Plaintiff is costs and attorney's fees; and

G.      Such other and additional relief as this Court may deem appropriate.

**COUNT IV:**
**MISAPPROPRIATION OF TRADE SECRETS (BUNDY AND NJB SALES)**

48.     Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

49.     Paragon Micro's Confidential Information, including but not limited to customer data, pricing and cost information, and marketing and sales strategies constitute trade secrets under Illinois law.

BCD0014995

50.     Paragon Micro has taken more than adequate measures to maintain the secrecy and confidentiality of its trade secrets, including (a) requiring employees and contractors to sign agreements containing confidentiality provisions; (b) discussing Paragon Micro's confidentiality policies with its employees at the time of hire; (c) requiring employees and contractors to sign post-employment restrictive covenants; (d) limiting access to the Confidential Information and monitoring who is given access to such information; (e) password protecting all computers; (f) instructing personnel not to disclose the Confidential Information to persons outside Paragon Micro both during and after their employment; (g) prohibiting the disclosure of Confidential Information in Paragon Micro's employment policies; (h) requiring all Confidential Information to be returned whenever an employee terminates his or her employment; (i) restricting access to Paragon Micro's customer files; (j) programming computer systems to lock automatically if they remain idle for more than a few minutes; (k) utilizing video surveillance in and around the office; and (l) requiring a company-issued key card to access the office.

51.     Plaintiff's trade secrets have actual and potential independent economic value from not being generally known to the public or other persons who can obtain economic value from their disclosure or use.

52.     By engaging in the conduct alleged herein, Bundy and NJB Sales have misappropriated, retained and misused Plaintiff's trade secrets for their benefit and to the detriment of Plaintiff, resulting in Plaintiff's loss of sales and other business opportunities.

53.     Defendants' conduct is willful, malicious, and unauthorized and has caused and is causing Plaintiff to suffer irreparable harm as well as incur substantial monetary damages.

54.     Defendants' misappropriation of Plaintiff's trade secrets constitutes a violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 et. seq.

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0014996

55.     Section 3 of the ITSA allows this Court to enjoin any actual or inevitable misappropriation of Plaintiff's trade secrets and to compel Defendants to take affirmative acts to protect Plaintiff's trade secrets from further misappropriation.

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.     An order finding and declaring that Defendants' conduct herein constitutes misappropriation of Plaintiff's trade secrets in violation of the ITSA;

B.     A Temporary Restraining Order, Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction pursuant to 765 ILCS 1065/3(a) enjoining Defendants, and any individual or entity acting in concert or participation with them, from engaging in acts and practices in further violation of the ITSA, including the continued use of or benefit from Plaintiff's trade secrets;

C.     An order pursuant to 765 ILCS 1065/3(c) requiring Defendants, and any individual or entity acting in concert or participation with them, to return to Plaintiff all trade secret information, including the return of and restoration of any and all trade secrets that Bundy or NJB Sales have destroyed or removed from Plaintiff's computer network;

D.     An accounting requiring Defendants to account for any and all transactions made with the use and benefit of Plaintiff's trade secrets, including all funds collected therefrom;

E.     An order requiring Defendants to disgorge and forfeit all compensation or other interests, profits and benefits received from any and all transactions made with the use and benefit of Plaintiff's trade secrets;

BCD0014997

F.    A judgment in favor of Plaintiff and against Defendants, jointly and severally, for compensatory damages pursuant to 765 ILCS 1065/4(a) in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

G.    A judgment in favor of Plaintiff and against Defendants, jointly and severally, for exemplary damages equal to twice the amount awarded for actual loss pursuant to 765 ILCS 1065/4(b);

H.    A judgment in favor of Plaintiff and against Defendants for punitive damages in an amount sufficient to generally and specifically deter their misconduct in the future;

I.    An order awarding Plaintiff its costs and attorney's fees as provided for in Section 5 of the ITSA, 765 ILCS 1065/5; and

J.    An order awarding Plaintiff such other and further relief as is just and equitable.

**COUNT V:**
**UNFAIR COMPETITION (BUNDY AND NJB SALES)**

56.    Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

57.    Defendants willfully undertook the foregoing acts with knowledge of and disregard for Paragon Micro's rights, and with the intention of causing harm to Paragon Micro and benefiting themselves.

58.    Defendants are unfairly competing in the marketplace while using Paragon Micro's Confidential Information and trade secrets to unfairly compete with Paragon Micro.

59.    As a consequence of the foregoing, Paragon Micro has suffered and will continue to suffer irreparable harm and loss.

60.    Paragon Micro has no precise adequate remedy at law to prevent Defendants' wrongful conduct.

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0014998

61.     Accordingly, Paragon Micro is entitled to an injunction prohibiting Defendants' wrongful conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.     A Temporary Restraining Order, Preliminary Injunction and upon final disposition, entry of a Permanent Injunction, prohibiting Bundy, directly or indirectly, from soliciting or accepting business from the Targeted Customers for the sale of IT products and services;

B.     A Temporary Restraining Order, Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, prohibiting each Defendant and any individual or entity acting in concert or participation with any of them, from using, disclosing, or transmitting for any purpose, Paragon Micro's Confidential Information and trade secrets;

C.     A Preliminary Injunction, and upon final disposition, entry of a Permanent Injunction, requiring each Defendant and any individual or entity acting in concert or participation with any of them, to return to Paragon Micro all copies or original records containing Paragon Micro's Confidential Information or trade secrets;

D.     An order for an accounting requiring Defendants to account for any and all transactions made with the use and benefit of Plaintiff's Confidential Information and/or trade secrets, including all funds collected therefrom;

E.     An order requiring Defendants to disgorge and forfeit all compensation or other interests, profits and benefits received from any and all transactions made with the use and benefit of Plaintiff's Confidential Information and/or trade secrets;

BCD0014999

F.      A judgment in favor of Plaintiff and against Defendants, jointly and severally, for compensatory damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

G.      An order for an accounting requiring Defendants to account for any and all transactions made with the use and benefit of Plaintiff's trade secrets, including all funds collected therefrom;

H.      A judgment in favor of Plaintiff and against Defendants, jointly and severally, for punitive damages in an amount sufficient to generally and specifically deter Defendants' wrongful conduct in the future;

I.      An award of reasonable attorneys' fees, costs and expenses;

J.      A constructive trust over any benefits that Defendants have or will receive from or during their wrongful acts; and

K.       Such other and further relief as the law and evidence proves warranted.

## COUNT VI:
## COMMON LAW FRAUD (BUNDY)

62.     Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

63.     By falsifying sales transaction reports to artificially inflate the gross profit on the sale, Bundy made misrepresentations of material facts on which he intended Paragon Micro to rely.

64.     Paragon Micro reasonably relied on Bundy's intentional misrepresentations concerning the gross profits generated by the transactions by paying Bundy commissions on the misrepresented and inflated gross profit.

65.     Bundy's misrepresentations were intentional and malicious, and intended to cause and did cause substantial economic injury to Paragon Micro.

BCD0015000

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.      A judgment in favor of Plaintiff and against Bundy for compensatory damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

B.      A judgment in favor of Plaintiff and against Bundy for punitive damages in an amount sufficient to generally and specifically deter Bundy's wrongful conduct in the future;

C.      An award of reasonable attorneys' fees, costs and expenses;

D.      A constructive trust over any benefits that Defendants have or will receive from or during their wrongful acts; and

E.      Such other and further relief as the law and evidence proves warranted.

### COUNT VII:
### CONVERSION (BUNDY AND NJB SALES)

66.     Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

67.     Bundy and NJB Sales converted Paragon Micro's Confidential Information, including, but not limited to the contact and sales information for the Targeted Customers.

68.     Upon information and belief, after committing these tortious acts, Bundy and NJB Sales used the Confidential Information so that Bundy and NJB Sales could compete with Paragon Micro.

69.     At all times relevant hereto, Paragon Micro was the owner of the Confidential Information.

70.     Bundy and NJB Sales intentionally interfered with Paragon Micro's right of possession to the Confidential Information.  By virtue thereof, Bundy and NJB Sales exercised

BCD0015001

unauthorized and wrongful assumption of control, dominion and ownership over the Confidential Information.

71.     Bundy and NJB Sales have failed and refused and continue to refuse to return any of the Confidential Information, despite demand made therefor by Paragon Micro.

72.     As a result of Bundy's and NJB Sales' conversion of Paragon Micro's Confidential Information, Plaintiff has been damaged in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000.

73.     Bundy's and NJB Sales' conduct as described herein was willful, wanton and malicious and was done in total disregard of Paragon Micro's ownership rights in its Confidential Information.

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.     A judgment in favor of Plaintiff and against Bundy for compensatory damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

B.     A judgment in favor of Plaintiff and against Bundy for punitive damages in an amount sufficient to generally and specifically deter Bundy's wrongful conduct in the future;

C.     An award of reasonable attorneys' fees, costs and expenses;

D.     A constructive trust over any benefits that Defendants have or will receive from or during their wrongful acts; and

E.      Such other and further relief as the law and evidence proves warranted.

BCD0015002

**COUNT VIII:**
**UNJUST ENRICHMENT (BUNDY AND NJB SALES)**

74.     Plaintiff re-alleges paragraphs 1 through 13 and paragraphs 19 through 32 as though fully set forth herein.

75.     Defendants have unlawfully obtained inflated commissions, and other profits and monies by virtue of their misappropriation and use of Paragon Micro's Confidential Information and trade secrets.

76.     Given that Defendants obtained the monies, Confidential Information and trade secrets by deceptive, unlawful and wrongful means, Defendants' retention such monies, Confidential Information and trade secrets violates fundamental principles of justice, equity and good conscience.

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.     A judgment in favor of Plaintiff and against Defendants, jointly and severally, for compensatory damages in an amount presently unknown to Plaintiff, but in good faith and reasonably believed to be in excess of $100,000;

B.     An order requiring Defendants, and any individual or entity acting in concert or participation with them, to return to Plaintiff all property of Plaintiff in either Defendant's possession or control, including but not limited to Paragon Micro's Confidential Information and trade secrets;

C.     An award of reasonable attorneys' fees, costs and expenses;

D.     A constructive trust over any benefits that Defendants have or will receive from or during their wrongful acts; and

E.     Such other and further relief as the law and evidence proves warranted.

BCD0015003

## COUNT IX:
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE
## (BOTH DEFENDANTS)

77.     Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

78.     Paragon Micro has achieved stable business relationships with its customers, and the expectation of stable relationships with the Targeted Customers.

79.     Defendants were and still are aware of the stable relationships Paragon Micro has with its customers and vendors, including the Targeted Customers.

80.     With this knowledge, Defendants are using Paragon Micro's Confidential Information and trade secrets to intentionally and wrongfully solicit the Targeted Customers for the purpose of inducing the Targeted Customers not to do business with Paragon Micro and instead to do business with NJB Sales.

81.     Defendants acted with malice and planned willfulness for the purpose of inducing the Targeted Customers and other Paragon Micro customers not to do business Paragon Micro and instead do business with NJB Sales. Defendants' conduct was accompanied by other wrongful conduct including breach of fiduciary duty, violation of the CFAA, misappropriation of trade secrets, and theft of confidential information.

82.     The conduct as described above was and is outrageous behavior and without justification.

83.     Paragon Micro has suffered and will continue to suffer irreparable harm as a direct result of Defendants' acts of tortious interference.

84.     Injunctive relief is necessary as the recovery of money damages alone would not fully compensate Paragon Micro for Defendants' acts of tortious interference.

85.     The conduct as alleged above is willful and malicious and entitles Paragon Micro to recover punitive damages.

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0015004

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.    A Temporary Restraining Order, Preliminary Injunction and upon final disposition, entry of a Permanent Injunction, prohibiting Defendants, directly or indirectly, from soliciting or accepting business from the Targeted Customers for the sale of IT products and services;

B.    An accounting to specifically identify all revenue realized by either Defendant, either directly or indirectly, from sales diverted from Paragon Micro;

C.    A constructive trust on all assets presently being held by either Defendant, either directly or through NJB Sales, so that it may be determined whether the assets of Plaintiff are being held in furtherance of or as a consequence of the usurpation of Paragon Micro's business and sales opportunities;

D.    A judgment in favor of Paragon Micro and against Defendants, jointly and severally, for compensatory damages in an amount presently unknown to Plaintiff but in good faith and reasonably believed to be in excess of $100,000;

E.    A judgment in favor of Paragon Micro and against each Defendant for punitive damages in an amount sufficient to generally and specifically deter his misconduct in the future;

F.    An order awarding Paragon Micro its costs incurred in this action, including its attorney's fees; and

G.    An order awarding Paragon Micro such other and further relief as is just and equitable.

## COUNT X:
## VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
## (BOTH DEFENDANTS)

86.    Plaintiff re-alleges paragraph 1 through 32 as though fully set forth herein.

Page 27 of 31

BCD0015005

87.     In December 2013, Bundy issued a price quotation to MTC on a Paragon Micro quotation form for certain computer hardware. Bundy knowingly misrepresented to MTC that Paragon Micro was the seller of the hardware when, in fact, Bundy intended for NJB Sales to sell the computer hardware to MTC.

88.     Bundy's misrepresentations to MTC regarding the seller of the computer hardware were intentional and part of Defendants' scheme to divert business from Paragon Micro to NJB Sales.

89.     Upon information and belief, Bundy has made similar misrepresentations to other Paragon Micro customers and vendors.

90.     Defendants' misrepresentations constitute deceptive trade practices under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 et seq., as in the course of Defendants business, vocation and occupation, Defendants caused the likelihood, and actual confusion, of the source, sponsorship, approval and certification of goods sold NCCC, and caused the likelihood, and actual confusion, and misunderstanding as to the affiliation, connection, and association between Bundy and Paragon Micro, and between NJB Sales and Paragon Micro. See 815 ILCS 510/2(a)(2), (3) and (12).

91.     Defendants willfully and purposefully made such misrepresentations in an attempt to divert business from Paragon Micro to NJB Sales.

92.     Paragon Micro has been damaged and will continue to be damaged if Defendants are not enjoined from continuing to make such misrepresentations.

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

BCD0015006

A.     A Temporary Restraining Order, Preliminary Injunction and upon final disposition, entry of a Permanent Injunction, prohibiting Defendants, directly or indirectly, from representing themselves as having any affiliation with Paragon Micro and misrepresenting that any price quotation or sale is from or through Paragon Micro;

B.     An order awarding Paragon Micro its costs incurred in this action, including its attorney's fees; and

C.     An order awarding Paragon Micro such other and further relief as is just and equitable.

**COUNT XI:**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT (BOTH DEFENDANTS)**

93.     Plaintiff re-alleges paragraphs 1 through 32 as though fully set forth herein.

94.     Bundy's misrepresentations to MTC regarding the seller of the computer hardware caused the likelihood, and actual confusion, of the source, sponsorship, approval and certification of goods sold MTC, and caused the likelihood, and actual confusion, and misunderstanding as to the affiliation, connection, and association between Bundy and Paragon Micro, and between NJB Sales and Paragon Micro.

95.     Upon information and belief, Bundy has made similar misrepresentations to other Paragon Micro customers and vendors.

96.     Defendants' misrepresentations constitute unfair competition and unfair deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

97.     Defendants willfully and purposefully made such misrepresentations in an attempt to divert business from Paragon Micro to NJB Sales.

BCD0015007

98.     As a consequence of the foregoing, Paragon Micro has suffered substantial monetary damages in connection with Defendants' misrepresentations and diversion of Paragon Micro's customers, and particularly the Targeted Customers. Paragon Micro will continue to suffer irreparable harm and loss unless Defendants' conduct is enjoined.

WHEREFORE, for all the foregoing reasons, Plaintiff, Paragon Micro, Inc., respectfully requests that the Court grant the following relief:

A.     A Temporary Restraining Order, Preliminary Injunction and upon final disposition, entry of a Permanent Injunction, prohibiting Defendants, directly or indirectly, from representing themselves as having any affiliation with Paragon Micro and misrepresenting that any price quotation or sale is from or through Paragon Micro;

B.     A judgment in favor of Paragon Micro and against Defendants, jointly and severally, for compensatory damages in an amount presently unknown to Plaintiff but in good faith and reasonably believed to be in excess of $100,000;

C.     A judgment in favor of Paragon Micro and against each Defendant for punitive damages in an amount sufficient to generally and specifically deter his misconduct in the future;

D.     An order awarding Paragon Micro its costs incurred in this action, including its attorney's fees; and

E.     An order awarding Paragon Micro such other and further relief as is just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Paragon Micro respectfully demands a trial by jury of all issues triable by a jury in this case.

BCD0015008

Dated: January 13, 2013

Respectfully Submitted,

PARAGON MICRO, INC, Plaintiff

By: /s/Mitchell S. Chaban___
          One of its attorneys

Mr. Mitchell S. Chaban – ARDC #6226668
Ms. Kristen E. O'Neill – ARDC #6300008
LEVIN GINSBURG
180 North LaSalle Street
Suite 3200
Chicago, IL 60601
Telephone: 312/368-0100
Counsel for: Plaintiff Paragon Micro, Inc

K:\EDSISS\DOCS\2901\00011\FP3166.DOCX

BCD0015009

## **VERIFICATION**

I, Jeff Reimer, declare:

I am the President of Paragon Micro, Inc. and I am duly authorized to verify the foregoing Verified Complaint on behalf of Paragon Micro, Inc. I have read the foregoing Verified Complaint, I have personal knowledge of the facts set forth in the Verified Complaint and, if called upon to do so, could and would testify competently thereto. The factual statements set out therein are true to my knowledge, except as to those matters that are stated on information and belief, which matters I believe to be true.

I hereby declare under penalty of perjury that the foregoing is due and correct.


Dated: January _10_, 2014

_____

Jeff Reimer, Paragon Micro, Inc.

BCD0015010

# EXHIBIT "A"

EXHIBIT "A"

BCD0015011



## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement made this 18th day of June, 2008, by and between **PARAGON MICRO, INC.**, an Illinois Corporation, with offices located at 31632 N Ellis Dr, STE 112 Volo, IL 60073 (Here in after referred to as "Paragon Micro") and

NAME:  Nick Bundy

ADDRESS:  146 Beech Dr  IL, Lake Zurich 60047

(Here in after referred to as "Contractor").

### WITNESSETH

WHEREAS, Company is engaged in the business of linking the distribution channel with corporate customers providing customized, fully integrated computing solutions to its customers specializing in computer systems, peripherals, system components, and software and networking products;

WHEREAS, Contractor desires to make such services as described herein available pursuant to the terms and conditions hereinafter set forth;

WHEREAS, Company and Contractor intend to create, by means of this Agreement and to maintain at all times during its performance, a relationship of Company and Independent Contractor and not an employer-employee relationship and, pursuant thereto, Company desires to contract for Contractors services and equipment, and Contractor agrees to furnish same to Company;

NOW THEREFORE, and in consideration of the foregoing premises and the mutual covenants herein contained, the parties hereto agree as follows:

1. STATUS OF CONTRACTOR AND ITS PERSONNEL

It is clearly understood and agreed, and it is the exclusive intention of the parties hereto, that Contractor is and will continue to be an Independent Contractor throughout the term of this Agreement. Neither Contractor nor any of Contractors employees or agents are to be considered employees of Company in performing service under this Agreement for any purposes whatsoever including, but not limited to, the Federal Insurance Contributions Act, the Social Security Act, the Federal Unemployment Tax Act, income tax withholding (federal, state and local) and any and all state taxes. Contractor agrees to timely file any necessary income tax returns, whether quarterly, annual or otherwise, and Company agrees to timely furnish Contractor with information returns required under federal law. If requested by Company, Contractor agrees to provide evidence of his/her payment of all federal, and if applicable, state taxes by submitting to Company (I) a copy of a canceled check or receipt thereof from the Internal Revenue Service or applicable state agency and (ii) a copy of the quarterly estimated return filed with the Internal Revenue Service reflecting payment of taxes on potential compensation by Company hereunder. Contractor agrees to furnish, at Contractor=s expense as deemed necessary or appropriate by Contractor, additional labor of its own choice and discretion to perform services required by this Agreement. Contractor shall be exclusively

BCD0015012

responsible for directing, supervising, disciplining, discharging or otherwise dealing with any personnel engaged by Contractor. Contractor and Company acknowledge and agree that any personnel furnished by Contractor are not employees of Company. Contractor shall be exclusively responsible for compliance with all applicable laws, regulations or rules with respect to self-employment and/or employment of others, such as earnings reporting and withholding requirements for any personnel engaged by Contractor. If requested by Company, Contractor agrees to provide to Company proof of payment and withholding of taxes required hereunder, and proof of the filing of any necessary reports required as a result of Contractor=s status of an employer. Contractor, at Contractor=s sole expense, shall maintain worker=s compensation insurance coverage for his/her own benefit and for the benefit of any employee or agent whom Contractor employs in the performance of this Agreement. Upon request of Company, proof of such worker=s compensation coverage shall be submitted by Contractor to Company. Notwithstanding the provisions of this Section 1, if a court or any agency of either the federal or state government determine that Contractor or any workers engaged by Contractor are employees of Company for any purposes whatsoever including, but not limited to, liability for withholding taxes, social security, unemployment compensation, and all similar taxes, worker=s compensation coverage or liability, as well as liability under industrial accident laws or any other state or federal law applicable to employment, Contractor agrees to hold and save Company harmless from any and all liability, obligation or expense incurred by Company including, but not limited to, the amount of any assessment, award, judgment or other order which may be entered against Company on account of such determination, as well as any other expense incurred by Company in connection with such matter, including attorneys fees.

2. Blank

3. NATURE OF SERVICES

Contractor, who is engaged in a business venture, renders services including those to Company. Company hereby acknowledges that Contractor is free to contract to provide services to others, including Company=s competitors, during the term of this Agreement. Contractor agrees to provide a complete service to Company with respect to all assignments offered to Contractor by Company and which are accepted by Contractor. Contractor has the right, in its sole discretion, to accept or refuse any assignments offered by Company. On any assignment accepted by Contractor, Contractor agrees to provide the service in a safely and timely manner. Contractor has the right to determine the actual performance of the services hereunder. Contractor also has the right to establish its own hours of work and methods of operation in performing services under this Agreement.

4. CONFIDENTIAL INFORMATION

Contractor acknowledges that in the performance of his/her duties for Company,

he/she has acquired and expects to continue to acquire information which is confidential to Company. The confidential information includes, but is not limited to, financial information; and the names, addresses and phone numbers of vendors, customers, clients and prospective customers and clients. Contractor acknowledges that this information is treated as confidential by Company, that Company takes meaningful steps to protect the confidentiality of this information, and that Company has at all times directed Contractor to maintain the confidentiality of this information. Contractor agrees that he/she will at no time during the period that this Agreement remains in effect or after the termination of this Agreement, whether that termination is voluntary, involuntary, for cause, not for cause, or otherwise, disclose any confidential information of Company gained by him/her. Immediately upon termination of this Agreement, Contractor shall return all of Company=s property to it, including any and all copies of said property.

### 5. NO-SOLICITATION

During the period that this Agreement remains in effect and for a period of three (3) months following the termination of this Agreement for any reason whatsoever, Contractor shall not: (a) directly or indirectly for or on behalf of himself/herself for any person, firm or entity solicit business from or do business with any actual or prospective customer or client which Contractor dealt with on behalf of the Company during the prior three (3) months; (b) or solicit for employment, hire or otherwise engage in business any persons presently or in the future associated with Company. If Contractor breaches any of the covenants of this paragraph, the duration of such covenants shall be extended for an additional period of time equal to the period of time during which such breach or breaches occurred, including the duration of any litigation with respect thereto, including all appeals. Contractor also agrees, that so long as this Agreement remains in effect Contractor will not take any action which might divert from the Company or its successors or assigns any opportunity which would be within the scope of the business of the Company.

### 6. Nondisclosure Agreement.

You agree to Company's standard Employee Nondisclosure Agreement and Proprietary Rights Assignment as a condition of your employment. We wish to impress upon you that we do not wish you to bring with you any confidential or proprietary material of any former employer or to violate any other obligation to your former employers.

### 7. INDEMNIFICATION

As between Company and Contractor only, without any regard or effect upon the obligations of Company to any third party, Contractor agrees to be responsible for, indemnify and hold Company harmless from any and all claims of any nature, losses, personal injury, death, and/or shortage of or damage packages or other property, and/or claim for any such loss or occurrence which may arise from or in connection with the services performed or to be performed pursuant to this Agreement, however arising, without regard to fault or negligence on the part of Contractor and Contractors employees and/or agents. Contractor's indemnification hereunder also includes, but is not limited to, attorneys' fees and any other expenses incurred in defending or processing any claim arising as a result of any of the aforementioned items or operation of the Equipment. Company may deduct any sums of which Contractor is responsible for hereunder from any monies that Company may owe to Contractor, including compensation under this Agreement.

## 8. COMPENSATION

As compensation for completed jobs performed by Contractor in accordance with this Agreement, Company shall pay Contractor a $50,000.00 annual (12 months) sales draw or $1923.07 per bi-weekly pay period. Commission plan is at a fixed forty (40%) percent detailed in (Exhibit A) based on all commissions collected by Company regarding Contractors services performed pursuant to the Agreement.

## 9. TERM OF AGREEMENT

This Agreement shall continue for length of employment; provided, however, this Agreement may be terminated by either party upon giving the other party thirty (30) days written notice; and provided further, that this Agreement may be immediately terminated upon failure of Contractor and/or Contractor=s agents or employees to comply with any applicable regulations of any authority or administrative agency, state or federal. Company shall also have the right to immediately terminate this Agreement in the event any written information given by Contractor to the Company, including but not limited to any application which may have been completed by Contractor, is incomplete or untruthful. Furthermore, in the event of any breach of the terms, provisions, conditions or covenants of this Agreement by either party, the nonbreaching party, may, at its option, terminate this Agreement immediately upon the occurrence thereof. The agreements of Contractor to indemnify and hold harmless Company under paragraphs 1 and 7 of this Agreement shall survive the termination of this Agreement, irrespective of the reason(s) for said termination.

## 10. Health Insurance

Independent contractor qualifies for Group Health Insurance provided under by Blue Cross Blue Shield of Illinois. Independent Contractor is liable for monthly rates associated under chosen plan.

BCD0015015

**10. GENERAL TERMS**

      Contractor and Company agree that this Agreement shall supersede and replace any other like agreements between the parties. This Agreement shall constitute the complete Agreement between the parties and can only be modified by a written agreement executed by all of the parties hereto. If any section, sentence or clause of this Agreement is deemed to conflict with the aforementioned authority and held illegal, such determination shall not affect the validity or the binding force and effect of the remaining portions of this Agreement on the parties hereto. Any and all disputes shall be submitted to and settled by final and binding arbitration in Chicago, Illinois, pursuant to the rules of the American Arbitration Association then in effect. The failure of either party to enforce at any time any of the provisions of this Agreement, or to exercise any option which is herein provided, or to require at any time performance of either party of any of the provisions hereof, shall in no way be construed to be a waiver of such provisions, nor in any way affect the validity of this Agreement or any part thereof, or the right of either party to thereafter enforce each and every such provision.

IN WITNESS WHEREOF, the respective parties hereto have executed this Agreement this_____7____ day of_____July_____, 2028.

Company:                                  Contractor:

_____          _____
**PARAGON MICRO, INC.**                   Nick Bundy

By: _Thomas Dahl_____

Managing Partner

Witness:

By: _Krystal Lombardi_____

# Paragon Micro Job Description

### (Exhibit A)

Date ___7/02/2008_____          Title __Global Account Manager
Prepared By__Human Resources_____      Department__Sales_____

## Job Description

| Job Title:  Senior Sales Account Manager | Reports to:   Sales Manager |
|---|---|
| Job Summary:  Inside Sales/Field Sales | |

| Draw & Commission:   $50000.00 Annual Draw. $1923.07 per pay period. Commission 40% Fixed |
|---|
| <ul><li>0-19,999k =40%</li><li>20k-29999k =40%</li><li>30k-39999k=40%</li><li>40k-49999k=40%</li><li>50k-59999k=40%</li><li>60k plus=40%</li></ul> |
| Hours Required:  None |

## Roles and responsibilities

| |
|---|
| 1. Enter  sales quotes,  orders, and manage complete sales cycle |
| 2. Effectively manage a customer's account from creation to daily maintenance |
| 3. Enter returns (RMA) and (CSR) customer service inquiries |
| 4. Identify opportunities and build relationships via phone, personal meetings, etc |
| 5. Purchasing for goods sold |
| 6. Aware of  Accounts receivable for your account base (Net 30) |
| 7. Manage customers store site, catalog, pricing, etc |
| 8. |
| 9. |
| 10. |

X_____
Initial

BCD0015017

## EMPLOYEE ACKNOWLEDGEMENT

Paragon Micro, Inc. ("Paragon") hereby requests that you confirm your acknowledgement and agreement by signing below, that Paragon has advised you not to disclose to Paragon (or any other entity) any confidential, proprietary or trade secret information belonging to your former employer (or any other entity).

By signing below, you also represent to Paragon that you have not brought any confidential, proprietary or trade secret information to Paragon Micro from your former employer (or any other entity) or violate any other obligation to your former employers.

Signed: _____     Date: __7 - 7 - 0 8__

Witness: _____

BCD0015018

# EXHIBIT "B"

BCD0015019

# Confidential
(For internal use only)



**Paragon Micro**
Global Business Technology Today

Paragon Micro
2 Corporate Drive
Suite 105
Lake Zurich, Illinois 60047
United States
http://www.paragonmicro.com

# Quotation

| Date | Expiration Date |
|---|---|
| Dec 9, 2013 2:52 PM CST | Feb 7, 2014 |

**Doc #**
232936 - rev 1 of 1

**Description**
None

**SalesRep**
Bundy, Nick
(P) Office 847-307-5969
(F) Fax 847-637-8179

**Customer Contact**
Pais, Karen

Karen.Pais@mtctrains.com

| Customer | Bill To | Ship To |
|---|---|---|
| Management & Training Corporation (MA1242) | Management & Training Corporation | NCCC - North Central Correctional Center |
| 500 North Market Place Drive | Payable, Accounts | Smith, Bradley |
| Centerville, Utah 84014 | 500 N. Market Place Drive | 670 Marion-Williamsport Road |
| (P) (801) 693-2600 | Centerville, Utah 84014 | Marion, Ohio 43302 |
| | (P) (801) 693-2600 | (P) 740-387-7040 |

**Customer PO:**
None

**Terms:**
Undefined

**Ship Via:**
FedEx Ground

**Special Instructions:**
None

**Carrier Account #:**
None

| Item | Description | Part # | Qty |
|---|---|---|---|
| 1 | HP LaserJet Pro 400 color M451dn<br>Printer - color - Duplex - laser - Legal, A4 - 600 dpi - up to 21 ppm (mono) / up to 21 ppm (color) - capacity: 300 sheets - USB, LAN | CE957A#BGJ | 1 |

| | Supplier | Supplier # | Description | Cost | Avail. | Profit (Pricing Method) |
|---|---|---|---|---|---|---|
| | D&H | HPLJM451DN | Color LaserJet Pro 400 M451dn | $481.26 | 27 | $-26.87 (-5.91 margin) |
| | Ingram Micro | NB0589 | LASERJET PRO 400 COLOR M451DN PRINTER | $334.30 | 1116 | $120.09 (26.43 margin) |
| | SYNNEX | 3153735 | HP LASERJET PRO 400 COLOR M451DN PRINTER | $325.29 | 357 | $129.10 (28.41 margin) |
| ✓ | Tech Data | 10218454 | COL LASERJET PRO M451DN 20PPM A4/ 21PPM | $316.81 | 747 | $137.58 (30.28 margin) |

**Totals**

Profit: $137.58    Cost: $316.81    GP %: 30.28%

Promo pricing will end anyday - please place order quickly.....no price lock.

Customer Comments: NET3025KDG

| Subtotal: | $454.39 |
|---|---|
| Tax (6.750%): | $30.67 |
| Shipping: | $0.00 |
| **Total:** | **$485.06** |

***Do you need help with a on-site hardware install?
Call your account manager today for a quote.

BCD0015020

# EXHIBIT "C"

EXHIBIT "C"

BCD0015021

**Tracy Josphsen**

| | |
|---|---|
| **From:** | Carrie Stanley <Carrie.Stanley@mtctrains.com> |
| **Sent:** | Tuesday, December 17, 2013 2:56 PM |
| **To:** | Tracy Josphsen |
| **Subject:** | RE: Invoices Needed |

I don't have an electronic copy of the quote but I could get it tomorrow if you still need it.
The quote was Quote# 232936 and it was through Paragon.

| | Reviewed | Transaction Date | Cardholder First Name | Cardholder Last Name | Merchant Name | Transaction Amount | Accounting Code Valu |
|---|---|---|---|---|---|---|---|
| ✪ | ☑ | 12/12/2013 | CARRIE | STANLEY | NJB SALES INC | $454.39 | COA - US64289 |

**Thanks**

Carrie Stanley
IS Administrative Assistant
Direct: 801.693.2636 | Fax: 801.693.2900
http://www.mtctrains.com

   

**From:** Tracy Josphsen [mailto:tracyj@paragonmicro.com]
**Sent:** Tuesday, December 17, 2013 1:51 PM
**To:** Carrie Stanley
**Subject:** RE: Invoices Needed

Carrie –

I hate ask - but can you send me a copy of your credit card statement just showing the NJB line item? I am wondering if something was billed in error to our sister company. If you have a copy of the quote too – that would be helpful.

Sorry for the extra work ☹

THANK YOU!!

1

BCD0015022

# EXHIBIT "D"

BCD0015023

# LEVIN GINSBURG
ATTORNEYS AT LAW

180 NORTH LASALLE STREET ▪ SUITE 3200
CHICAGO, ILLINOIS 60601-2800
312.368.0100

January 3, 2014

## VIA UPS Overnight Delivery

Mr. Nicholas J. Bundy
NJB Sales, Inc.
146 Beech Drive
Lake Zurich, IL 60047

Re:  Termination Independent Contractor Agreement/Cease and Desist/Demand for
Preservation of Evidence
Our File No. 2901-11

Dear Mr. Bundy:

We represent Paragon Micro, Inc. ("Paragon Micro"), in connection with its investigation of
certain activities engaged in by you and your company, NJB Sales, Inc. ("NJB").

The investigation uncovered facts establishing that through artifice, deception and fraud, you
were unjustly enriched by diverting to NJB sales orders that were placed at Paragon Micro. We
are also aware that you have misappropriated Paragon Micro's confidential and proprietary
information, which you have unlawfully used and continue to use unlawfully to divert customers
and sales away from Paragon Micro. Further, we have knowledge that you have remotely
accessed Paragon Micro's computer network and deleted emails, documents and other
information in order to conceal your unlawful activities.

Your actions constitute a breach of your Independent Contractor Agreement ("Agreement") with
Paragon Micro, as well as breach of fiduciary duty, conversion, fraud, unfair competition, and
violation of the Illinois Trade Secrets Act. NJB is guilty of civil conspiracy, aiding and abetting,
unfair competition, and violation of the Illinois Trade Secret Act, among other potential causes
of action..

### Termination of Independent Contractor Relationship

As a result of your deceptive, fraudulent and unlawful activities, you are hereby notified that you
(and your company, NJB) are terminated, for cause, as an independent contractor of Paragon
Micro effective immediately. You may no longer represent that you or NJB are affiliated in
anyway with Paragon Micro. Further, Paragon Micro's offer to NJB to enter into the
Independent Contractor Agreement that Paragon Micro presented to you on December 27, 2013,
is hereby withdrawn and rescinded.

### Demand to Cease and Desist and For Other Actions

BCD0015024

# LEVIN GINSBURG

ATTORNEYS AT LAW

Page 2 of 5
Mr. Nicholas J. Bundy
NJB Sales, Inc.
Our File No. 2901-11
January 3, 2014

On behalf of Paragon Micro, we demand that you and NJB do the following:

- Immediately and permanently cease and desist from using or disclosing Paragon Micro's confidential and proprietary information;

- Immediately return to Paragon Micro all confidential and proprietary information of Paragon Micro whether in tangible or electronic form;

- Immediately and permanently cease and desist from contacting, soliciting or accepting business from any customer of Paragon Micro; and

- Immediately make available to Paragon Micro all of your personal electronic devices, including but not limited to laptop and desk top computers, smart phones, and electronic data storage devices, for imaging and forensic analysis.

## Demand for Evidence Preservation

Given the prospect of litigation over these issues, we demand that you and NJB immediately take all steps necessary to preserve all electronic stored information, documents, and other tangible things in your or its possession, custody or control, including (without limitation) all documents and communications concerning Paragon Micro, the solicitation and sales of IT products and services, the accessing of Paragon Micro's computer network, and Paragon Micro's Confidential Information.

You should provide a copy of this letter to the persons, if any, whose job responsibilities cover the matters addressed herein. The above-listed information should be preserved and handled in the manner set forth in this letter.

1.    **Electronic Data to be Preserved:** The following types of electronic data should be preserved, in accordance with the steps in paragraphs 2-8 below:

   (a)    All electronic mail and information about electronic mail (including message contents, header information and logs of electronic mail system usage) sent or received by you, NJB or any of its employees or agents;

   (b)    All other electronic mail and information about electronic mail (including message contents, header information and logs of electronic mail system usage);

BCD0015025

# LEVIN GINSBURG

**ATTORNEYS AT LAW**

Page 3 of 5
Mr. Nicholas J. Bundy
NJB Sales, Inc.
Our File No. 2901-11
January 3, 2014

> (c) All databases (including all records and fields and structural information in such data bases);
>
> (d) All logs of activity on computer systems which may have been used to process or store electronic data;
>
> (e) All word processing files and file fragments;
>
> (f) All electronic data created by application programs which process financial, accounting and billing information;
>
> (g) All files and file fragments containing information from electronic calendars and scheduling programs;
>
> (h) All electronic data files and file fragments created or used by electronic spreadsheet programs; and
>
> (i) All other electronic data containing potentially discoverable information.

2. **On-Line Data Storage on Network Servers, Mainframes, and Personal Computers:** With regard to on-line storage and/or direct access storage devices attached to your and NJB's network servers, mainframe computers, PDA's, cell phones, smart phones, blackberry's and/or personal computers: do not modify or delete any electronic data files existing at the time of this letter's delivery, which meet criteria set forth in paragraph 1 above, unless a true and correct copy of each such electronic data file has been made and steps have been taken to assure that such a copy will be preserved and accessible for purposes of litigation.

3. **Off-Line Data Storage, Tape Backups, Floppy Diskettes and Other Removable Electronic Media:** With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media, which, at the time of this letter's delivery, contained any electronic data meeting the criteria listed in paragraph 1 above: stop any activity which may result in the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with defendants' computer systems, including tapes, cartridges, floppy diskettes, and all other media, whether used with mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all computer systems.

# LEVIN GINSBURG

ATTORNEYS AT LAW

Page 4 of 5
Mr. Nicholas J. Bundy
NJB Sales, Inc.
Our File No. 2901-11
January 3, 2014

4. **Replacement of Data Storage Devices:** Do not dispose of any electronic data storage devices and/or media which may be replaced due to failure and/or upgrade and/or other reasons that may contain electronic data meeting the criteria listed in paragraph 1 above.

5. **Hard Drives on Standalone Personal Computers and Network Workstations:** With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on hard drives attached to stand-alone personal computers and/or network workstations at the time of this letter's delivery: do not alter or erase such electronic data, and do not perform other procedures (such as data compression and disk de-fragmentation or optimization routines) which may impact such data, unless a true and correct copy has been made of such active files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of any litigation.

6. **Program and Utilities:** Preserve copies of all application programs and utilities that may be used to process electronic data covered by this letter.

7. **Log of System Modifications:** Maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data meeting the criteria listed in paragraph 1 above, regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

8. **Evidence Created Subsequent to this Letter:** With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence should not be destroyed and you should take whatever steps are appropriate to avoid destruction of evidence.

## Demand for Accounting and Disgorgement of Profits

We further demand that you provide to Paragon Micro a full accounting of the profits made via sales diverted from Paragon Micro and disgorge the ill-gotten gains realized through your theft, fraud and deception. Your choices are (a) to promptly provide the full accounting demanded and to make arrangements for the disgorgement of all monies and other benefits you realized through your scheme; or (b) to defend your unlawful and dishonest actions in court.

Should you fail to comply with any of the demands in this letter or fail to provide the demanded accounting by January 8, 2014, you are advised that Paragon Micro will take legal action against you and NJB wherein it will seek to enjoin your unlawful activities as well as an award of compensatory and punitive damages, forfeiture of the compensation and other benefits you took

BCD0015027

# LEVIN GINSBURG

ATTORNEYS AT LAW

Page 5 of 5
Mr. Nicholas J. Bundy
NJB Sales, Inc.
Our File No. 2901-11
January 3, 2014

from Paragon Micro through your malfeasance, attorney's fees, court costs and all such other and further relief as the court may allow. Upon obtaining a judgment, we will attached your assets and garnish your wages to satisfy the judgment.

This letter is without prejudice to the causes of action, claims and defenses Paragon Micro has or may have against you and/or NJB.

Sincerely,

MITCHELL S. CHABAN
mchaban@lgattorneys.com

MSC/dl

BCD0015028